IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CAROLYN BETHEA, et al., | : | HON. JEROME B. SIMANDLE |
| Plaintiffs, | : | Civil No. 11-254 (JBS/JS) |
| v. | : | **OPINION** |
| ISRAEL ROIZMAN, et al., | : | |
| Defendants. | : | |

APPEARANCES:

Joseph Green, II, Esq.
EL-SHABAZZ & HARRIS LLC
100 South Broad Street
Suite 1525
Philadelphia, PA  19110
     -and-
Geoffrey V. Seay, Esq.
1315 Walnut Street, Suit 602
Philadelphia, PA 19107
Pro hac vice
     Attorneys for Plaintiffs Carolyn Bethea, Gloria D. Abner,
     Iona Evans, Darcell Gilmore, Margaret David, Shawn Smalls,
     Twanda Smith, Shelly McCullough, Georgetta Brown, Wanda
     Matis, Christina O'Casio, Maria Torres, Jaharia Figuero,
     Yvette Hernandez, Gladys Antelo, A Class of African-American
     Female Tenants and Prospective Homeowners at Camden
     Townhouses II Broadway Street, A Class of Hispanic Female
     Tenants at Camden Townhouse II Broadway Street, A Class of
     Low-Income Female Tenants at Camden Townhouse II Broadway
     Street.

Joseph B. Fiorenzo, Esq.
SOKOL, BEHOT & FIORENZO, ESQS.
Continental Plaza
433 Hackensack Avenue
Hackensack, NJ  07601
     Attorney for the Defendants Kathy Hvasta, Camden Townhouse
     Associates, II, L.P., Israel Roizman, Roizman Development,
     Inc., William L. Cooney, S.H.N.I.R. Apartment Management
     Corp. and Melissa Jackson-Deeble

Irene E. Dowdy, Assistant United States Attorney

OFFICE OF THE UNITED STATES ATTORNEY
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ  08101
    United States Department of Housing and Urban Development
    and the United States of America

Kimberly Ann Sked, Deputy Attorney General
OFFICE OF THE NEW JERSEY ATTORNEY GENERAL
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ  08625
    Attorney for the State of New Jersey Housing and Mortgage
    Finance Agency

Andrew J. Walko, Deputy Attorney General
Kelly Amber Samuels, Deputy Attorney General
Patricia E. Stern, Deputy Attorney General
OFFICE OF THE NEW JERSEY ATTORNEY GENERAL
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ  08625
    Defendants Daniel Esochanghi, Annetta McCormick, Charles A.
    Richman, and the State of New Jersey Department of Community
    Affairs Division

Andrew J. Walko, Deputy Attorney General
OFFICE OF THE NEW JERSEY ATTORNEY GENERAL
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ  08625
    Attorney for Defendants Commissioner Susan Bass Levin and
    Lori Grifa

Michelle Banks-Spearman, Esq.
ATTORNEY'S OFFICE FOR THE CITY OF CAMDEN
4th Floor, Room 419
P.O. Box 95120
Camden, NJ  08101
    Attorney for Defendants City of Camden, New Jersey and
    Edward Williams

Mark P. Asselta, Esq.
Brown & Connery, LLP
360 Haddon Avenue

P.O. Box 539
Westmont, NJ  08108
    Attorney for Defendants Olivette Simpson and the City of
    Camden Redevelopment Agency

William M. Tambussi, Esq.
Brown & Connery, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ  08108
    Attorney for Defendant Commissioner Susan Bass Levin

## Table of Contents

I.    Introduction.........................................4
II.   Background...........................................5
III.  Standard of Review..................................11
IV.   The DCA Defendants' Motion to Dismiss...............14
      A.    The Parties Arguments.........................14
      B.    Analysis......................................22
            1.    Eleventh Amendment Immunity.............22
            2.    Qualified Immunity on Counts XI and XII.27
            3.    Tort and Contract Claims................34
            4.    Title VI Claims.........................38
            5.    Remaining Federal Claims in Counts X and XII.40
            6.    Opposition of the Roizman Defendants.....43
      C.    Conclusion as to the DCA Defendants...........44
V.    New Jersey Housing and Mortgage Financing Agency's Motion
      to Dismiss...........................................46
      A.    The Parties' Arguments........................46
      B.    Analysis......................................48
            1.    Sovereign Immunity......................48
            2.    Tort and Contract Claims................50
            3.    Title VI Claims.........................50
            4.    Opposition of the Roizman Defendants.....52
      C.    Conclusion as to the NJHMFA....................52
VI.   CRA Defendants' Motion to Dismiss...................53
      A.    The Parties' Arguments........................55
      B.    Analysis......................................56
            1.    Tort Claims.............................56
            2.    Remaining Federal Claims................57
            3.    Opposition of the Roizman Defendants.....59
      C.    Conclusion as to the CRA Defendants...........59
VII.  Federal Defendants' Motion to Dismiss...............60
      A.    The Parties' Arguments........................61
      B.    Analysis......................................63

              1.   Sovereign Immunity..........................63
              2.   Tort Claims.................................64
              3.   Remaining Federal Claims....................67
              4.   Bivens Claim against Defendant Thumar.......67
         C.   Conclusion as to the Federal Defendants..........72
VIII. Defendant Susan Bass-Levin's Motion to Dismiss.......73
         A.   The Parties' Arguments...........................74
         B.   Analysis.........................................75
              1.   Tort Claims.................................75
              2.   Federal Claims..............................79
         C.   Conclusion as to Defendant Susan Bass-Levin in
              Individual Capacity..............................80
IX.  Conclusion...............................................81

**SIMANDLE**, Chief Judge:

# I.   INTRODUCTION

     This matter is before the Court on six motions to dismiss
filed by several groups of defendants.  The first motion to
dismiss was filed by Defendants Daniel Esochanghi, Annetta
McCormick, Charles A. Richman, and the State of New Jersey
Department of Community Affairs Division ("DCA Defendants").
[Docket Item 99.]  The second motion to dismiss was filed by the
United States Department of Housing and Urban Development and the
United States of America ("Federal Defendants").  [Docket Item
100.]  The third motion to dismiss was filed by the State of New
Jersey Housing and Mortgage Finance Agency ("NJHMFA").  [Docket
Item 101.]  The fourth motion to dismiss was filed by the City of
Camden Redevelopment Agency and Olivette Simpson ("CRA
Defendants").  [Docket Item 102.]  The fifth motion to dismiss
was filed by Lori Grifa and Susan Bass Levin, as they are sued in
their individual and official capacities as former DCA

Commissioners.  [Docket Item 150.]  The final motion to dismiss was filed by Defendant Susan Bass Levin in her individual capacity as President and CEO of the Cooper Foundation.  [Docket Item 151.]

The Plaintiffs filed opposition to all the motions to dismiss.  Defendants Kathy Hvasta, Camden Townhouse Associates, II, L.P., Israel Roizman, Roizman Development, Inc., William L. Cooney, S.H.N.I.R. Apartment Management Corp. and Melissa Jackson-Deeble ("Roizman Defendants") filed opposition to the motions to dismiss filed by the DCA Defendants, the CRA Defendants and the NJHMFA.

For the reasons discussed herein, the court will grant all six motions to dismiss.

## II.  BACKGROUND

The Plaintiffs filed their initial complaint on January 18, 2011.  [Docket Item 1.]  The Plaintiffs then filed their first amended complaint on February 15, 2011.  [Docket Item 6.]  In response, the Federal Defendants, the DCA Defendants and NJHMFA filed dispositive motions to dismiss the first amended complaint. [Docket Items 51, 52, 53.]  The Plaintiffs then filed a motion to stay disposition of these dispositive motions [Docket Item 62] and were subsequently granted leave to file the Second Amended Complaint.  [Docket Item 69.]  The Plaintiffs filed their Second Amended Complaint on June 29, 2011 [Docket Item 73] and the court

5

dismissed the dispositive motions as moot without prejudice to renewal in light of the Plaintiffs' amended pleading. [Docket Item 76.]  The instant motions to dismiss the Second Amended Complaint were filed.

The Second Amended Complaint is brought by 16 named Plaintiffs who are low-income African American and Hispanic women who allege that they are present and/or former tenants at Camden Townhouses II Broadway Street. (Sec. Am. Compl. ¶¶ 15-30.)  The Second Amended Complaint names numerous defendants including the Roizman Defendants; the DCA Defendants; NJHMFA; the City of Camden and Edward Williams as Director of Development and planning; the CRA Defendants; and the Federal Defendants. (Sec. Am. Compl. ¶¶ 34-49; 52-53; 55-59.)

The Second Amended Complaint asserts the Roizman Defendants were involved in low-income housing development. (Sec. Am. Compl. ¶¶ 4, 35, 38, 40.)  In November 1992, the Camden Redevelopment Agency ("CRA") sold 65 tracts of land and improvements to one of Roizman's businesses - Camden Townhouses Associates II, L.P. - for one hundred seventy-five thousand dollars ($175,000), and an additional forty thousand dollars ($40,000) administrative fee. (Sec. Am. Compl. ¶ 62.)  Camden Townhouses Associates II also entered into an agreement that these 65 tracts of land were to be developed into 91 affordable rental housing units. (Sec. Am. Compl. ¶ 63.)

Contemporaneously, Roizman, through Camden Townhouses Associates II, L.P., acquired a loan from the New Jersey Housing Mortgage and Financing Agency ("NJHMFA") and entered into a Financing, Deed Restriction and Regulatory Agreement with the NJHMFA which stated:

> It is understood by the parties hereto that after a term of fifteen (15) years from the end of the Construction Period it is the Owner's intent to sell the Project rental units to Low-Income Persons. In the event of such a sale, the Owner Hereby represents, warrants and covenants that the Project rental units will be initially offered for sale for the sum of One Dollar (U.S. $1.00) to the existing Low-Income Tenants who meet the income requirements of Low-Income Persons.

(Sec. Am. Compl. ¶ 74.) On July 15, 1994, NJHMFA and Camden Townhouses Associates II, L.P. recorded a Deed of Easement and Restrictive Covenant for Extended Low-Income Occupancy which provided:

> This Deed of Easement and Restrictive Covenant shall constitute an agreement between HMFA and the Owner and is enforceable in the courts of the State of New Jersey by HMFA or by an individual or individuals whether prospective, present or former occupants of the Building, who meet the low-income eligibility standards applicable in the Building under Section 42(g) of the Tax Code, said individual(s) being beneficiaries of the agreement which is expressed herein between the HMFA and the Owner.

(Sec. Am. Compl. ¶ 75.)

Both agreements were recorded. (Sec. Am. Compl. ¶¶ 74, 75.)

The units at the Camden Townhouses Broadway II development were then occupied by the Plaintiffs who are low-income, African American and Hispanic females. The Plaintiffs received Section 8

7

Housing Vouchers pursuant to 42 U.S.C. § 1437f(o) which provided the Plaintiffs with rental assistance while living at the Camden Townhouses Broadway II development.  These housing vouchers were administered through the New Jersey Department of Community Affairs ("DCA"). (Sec. Am. Compl. ¶ 48.)

As a matter of legal argument, the Plaintiffs contend that as soon as they became tenants at the Camden Townhouses II Broadway Street Housing Development, "they became either direct parties to the contract or third-party beneficiaries to the contract between Roizman, Roizman Developments, Inc. and its affiliated companies and NJHMFA." (Sec. Am. Compl. ¶¶ 105-107; 123-126.)

Plaintiffs also allege that in 2010, the DCA unilaterally modified the terms of Plaintiffs' annual Section 8 housing vouchers.  (Sec. Am. Compl. ¶¶ 108-113; 169.)  The Plaintiffs allege they were told by the DCA that they no longer met the Section 8 guidelines for occupancy at Camden Townhouses II Broadway.  The Plaintiffs allege they were "unlawfully steered" by the DCA Defendants and Roizman Defendants to other, less desirable rental units.  (Sec. Am. Compl. ¶¶ 116, 118, 120-121, 170, 173, 179-184.)  Plaintiff Bethea who remained as a resident in the Camden Townhouses II Broadway development tendered $1 to the Roizman Defendants but were never tendered title to her housing unit.   (Sec. Am. Compl. ¶¶ 123m 126, 238.)  Plaintiff

8

Bethea was later evicted for failure to pay rent. (Sec. Am.
Compl. ¶¶ 127-143).

The Plaintiffs ultimately brought the instant action and the
following defendants are named in the Second Amended Complaint:

- Israel Roizman ("Roizman Defendants")
    - Roizman Development, Inc.
    - Camden Townhouses Associates II, L.P.
        - Kathy Hvasta, Manager, Camden Townhouses
          Associates, II, L.P.
        - William L. Coney, Manager Camden
          Townhouses Associates, II, L.P.
    - S.H.N.I.R. Apartment Management Corp.
        - Melissa Jackson-Deeble, Tenants Accounts
          Assistant Coordinator, S.H.N.I.R.
          Apartment Management Corp.

- State of New Jersey Department of Community Affairs
  ("DCA Defendants")
    - Charles A. Richman, Acting Commissioner
    - Lori Grifa, Former Commissioner
    - Susan Bass-Levin, Former Commissioner
    - Joseph V. Doria, Jr., Former Commissioner
    - Annetta McCormick, Field Office Supervisor
    - Daniel Esochanghi, Employee
    - Kia Turner, Employee

- State of New Jersey Housing and Mortgage Finance
  Agency ("NJHMFA")

- City of Camden
    - Edward Williams, Director of Development and
      Planning

- Camden Redevelopment Agency ("CRA Defendants")
    - Olivette Simpson, Director of Housing

- United States Department of Housing and Urban
  Development ("Federal Defendants")
    - Balu Thumar, Acting Director of Public Housing

The Plaintiffs allege that as a result of the denial of
their alleged right to purchase their low-income housing units

for one dollar ($1), the named defendants violated a multitude of Plaintiffs' federal civil and constitutional rights as well as committed a number of state law violations against them.

The Second Amended Complaint brings the following causes of action:

Count I:  Tortious Interference with Contract against All Defendants; and

Count II:  Breach of Contract against All Defendants; and

Count III:  Unjust Enrichment against Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., the DCA, NJHMFA and City of Camden; and

Count IV:  Fraudulent and Deceptive Trade Practices against Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., the DCA, NJHMFA and City of Camden; and

Count V:  Specific Performance as to Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., and NJHMFA; and

Count VI:  Negligence against Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., and S.H.N.I.R.; and

Count VII:  Violation of N.J.S.A. 54:4-6.1, et seq. against Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., and S.H.N.I.R.; and

Count VIII:  Intentional Infliction of Emotional Distress against All Defendants; and

Count IX:  Unfair Debt Collection Practices against Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., S.H.N.I.R., Hvasta, Coney, and Jackson-Deeble; and

Count X:  Fraud and Deceptive Business Practices against Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., S.H.N.I.R., Hvasta, Coney, Jackson-Deeble, McCormick, Esochanghi and NJDCA; and

Count XI: Violations of constitutional amendments, civil
rights and other federal laws against All Defendants; and

Count XII: Conspiracy under the color of state law to
violate Plaintiffs' constitutional rights, civil rights
and other rights against All Defendants; and finally

Count XIII: <u>Bivens</u> claim against Thumar and Jane and John
Does.

The DCA Defendants, NJHMFA, CRA Defendants, Federal Defendants
and Defendants Olivette Simpson and Susan Bass-Levin have filed
the instant motions to dismiss the counts against them in the
Second Amended Complaint in their entirety.


## III.  Standard of Review

A motion to dismiss for lack of subject matter jurisdiction
pursuant to Fed. R. Civ. P. 12(b)(1) which is filed prior to
answering the complaint is considered a "facial challenge" to the
court's subject matter jurisdiction.  <u>Cardio-Med. Assocs. v.
Crozer-Chester Med. Ctr.</u>, 721 F.2d 68, 75 (3d. Cir. 1983).  In
deciding a Rule 12(b)(1) motion to dismiss, the court must
"review only whether the allegations on the face of the
complaint, taken as true, allege facts sufficient to invoke the
jurisdiction of the district court."  <u>Licata v. U.S. Postal
Serv.</u>, 33 F.3d 259, 260 (3d Cir. 1994).

In deciding the Defendants' motion to dismiss for failure to
state a claim upon which relief may be granted pursuant to Fed.
R. Civ. P. 12(b)(6), the Court must look to the face of the

complaint -- and undisputedly authentic underlying documents --
and decide, taking all of the allegations of fact as true and
construing them in a light most favorable to the Plaintiffs,
whether their allegations state any legal claim, and "determine
whether, under any reasonable reading of the complaint, the
plaintiff is entitled to relief." Phillips v. County of
Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (citing Pinker v.
Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)); see
Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir.
1990). For Plaintiffs to proceed with their claims, the
complaint must contain "sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its
face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Fowler v.
UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

     In accord with Fed. R. Civ. P. 8(a)(2), a pleading that
states a claim for relief need only contain "a short and plain
statement of the claim showing that the pleader is entitled to
relief." Thus, a plaintiff is obligated to "provide the
'grounds' of his 'entitle[ment] to relief,'" which requires more
than "labels and conclusions," but he is not required to lay out
"detailed factual allegations." Twombly, 550 U.S. at 555
(quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

     Therefore, a complaint must contain facially plausible

claims, that is, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Twombly</u>, 550 U.S. at 556.

Following the Supreme Court precedent in <u>Iqbal</u>, the Third Circuit Court of Appeals in <u>Fowler</u> instructs district courts to conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim upon which relief may be granted. <u>Fowler</u>, 578 F.3d at 210-11 (citations omitted). The analysis should be conducted as follows:

> (1) the Court should separate the factual and legal elements of a claim, and the Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions; and (2) the Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief, so the complaint must contain allegations beyond plaintiff's entitlement to relief. A plaintiff shows entitlement by using the facts in his complaint.

<u>Id.</u>

The Court independently considers whether the alleged claims are sufficient to survive Defendants' motion to dismiss, and draws on its judicial experience and common sense when conducting this context-specific inquiry. <u>See</u> <u>Twombly</u>, 550 U.S. at 556 (holding that a reviewing court's inquiry necessitates that a court draw on its judicial experience and common sense).

Only the allegations in the complaint, matters of public

record, orders, and exhibits attached to the complaint are taken into consideration.  Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). Additionally, without converting this motion to a motion to summary judgment, the "court may consider an undisputedly authentic document . . . if the plaintiff's claims are based on the document."  Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  "To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."  Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426-427 (3d Cir. 1999).

IV.  **The DCA Defendants' Motion to Dismiss**

   **A. The Parties' Arguments**

   Defendants Daniel Esochanghi, Annetta McCormick, Charles A. Richman, and the State of New Jersey Department of Community Affairs Division filed the first motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Docket Item 99] and this motion was later joined by Defendants Lori Grifa and Susan Bass-Levin [Docket Item 150] (collectively "DCA Defendants").[1]  The

_____

   [1] Defendant Susan Bass-Levin is sued in the instant complaint in her individual and official capacity as former DCA Commissioner as well as her individual capacity based on her alleged actions as the CEO of the Cooper Foundation.  Defendant

Second Amended Complaint alleges the following eight counts against the DCA Defendants:  tortious interference with contract (Count I); breach of contract (Count II); unjust enrichment (Count III); fraudulent and deceptive trade practices (Count IV); intentional infliction of emotional distress (Count VIII); fraud and deceptive business practices (Count X); violations of constitutional amendments, civil rights and other federal laws (Count XI); and conspiracy under the color of state law to violate Plaintiffs' constitutional rights, civil rights and other rights (Count XII).[2]

The DCA Defendants make several arguments in support of their motion to dismiss.  First, the DCA Defendants argue that Eleventh Amendment sovereign immunity applies to bar all claims

---

Susan-Bass Levin joined the DCA Defendants' motion to dismiss to the extent she is being sued in her capacity as a former DCA Commissioner.  She filed a separate motion to dismiss as to the claims against her as CEO of the Cooper Foundation [Docket Item 151], the merits of which will be addressed in Section VIII below.  The instant analysis will only pertain to the claims brought against Defendant Susan Bass-Levin in her individual and official capacity as former DCA Commissioner.

[2] The DCA Defendants contest the applicability of the allegations against them for breach of contract, unjust enrichment and fraudulent trade practices.  These claims were not raised against the DCA defendants in the original pleadings, and the extension of these claims to the DCA defendants in the Second Amended Complaint exceeds plaintiffs' authority to amend as defined by Magistrate Judge Schneider in his April 21, 2011 order. [Docket Item 45.]  Magistrate Judge Schneider only permitted the Plaintiffs to file a Second Amended Complaint for the explicit purpose of "naming new parties" and did not authorize the Plaintiffs to assert new bases for liability against already named defendants. [Docket Item 45 ¶ 3.]

against the DCA and the individually named DCA employees in their official capacities with the exception of Plaintiffs' Title VI claim.  The DCA maintains that it is a statutory department with the State of New Jersey, and therefore sovereign immunity is applicable.  <u>See</u> <u>N.J.S.A.</u> 52:27D-1 ("There is hereby established in the Executive Branch of the State Government a principal department which shall be known as the Department of Community Affairs.").  The DCA Defendants concede that Congress has expressly abrogated the states' sovereign immunity in respect to claims brought pursuant to Title VI, 42 U.S.C. § 2000d, <u>et</u> <u>seq.</u>, so sovereign immunity would not apply to bar Plaintiffs' Title VI claims against the DCA and DCA officials.

Next, the DCA Defendants argue that the allegations against the individual DCA officials are also barred by the Eleventh Amendment because the Second Amended Complaint, while naming each of the individual DCA defendants in their personal and official capacities, fails to allege that these individual DCA defendants acted outside their official capacity.  Instead, the DCA Defendants argue the allegations against them in the Second Amended Complaint relate exclusively to actions taken in their official capacity and are consistent with the administrative and discretionary duties one would expect as part of the routine activities of a DCA field office employee.  Therefore, the DCA Defendants argue sovereign immunity should apply to bar all

16

claims against the individual DCA employees with the exception of Title VI.

Alternatively, the DCA employees argue that they are entitled to qualified immunity for claims brought against them in their personal capacity.  The DCA Defendants argue that any rights the Plaintiffs had to purchase their Camden Townhouse units from Roizman for a dollar arose from the language of the Regulatory Agreement.  The Regulatory Agreement did not create any clearly established federal rights of which the DCA Defendants could have known about.  Therefore, the DCA Defendants contend that the Plaintiffs have failed to allege a violation of their clearly established federal rights by the individual DCA Defendants and accordingly, qualified immunity is appropriate.

As to the Title VI claim, the DCA Defendants maintain that this claim should be dismissed in its entirety against them. First, the DCA Defendants argue that Title VI does not allow for individual liability and therefore, the claims against the individual DCA defendants must be dismissed.  The DCA Defendants also argue that the Second Amended Complaint fails to identify a pattern of intentional discrimination or allege that any of the DCA's policies, general practices or rules fostered or aided racially discriminatory conduct.  Therefore, the DCA Defendants maintain that the complaint fails to state a claim against the DCA for violations of Title VI.

As to the Plaintiffs' state law claims, the DCA Defendants also argue that the Plaintiffs have failed to comply with the notice and pleading requirements of the New Jersey Tort Claims Act, N.J.S.A. 59:8-1 and Contractual Liability Act, N.J.S.A. 59:13-1.  Both Acts require written notice of a claim be served within ninety days of the claim's accrual.  In this case, the Defendants argue that the Plaintiffs have failed to plead compliance with either of the notice provisions and therefore, this court has no jurisdiction to hear the Plaintiffs' tort and contract claims.

Finally, the DCA Defendants argue that the Plaintiffs' have failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) as to the remaining federal causes of action.

The Plaintiffs filed opposition to the DCA Defendants' motion to dismiss.  The Plaintiffs do not contest that the Eleventh Amendment bars suit against the DCA and the individual DCA defendants in their official capacities with the exception of the Title VI claim.  The Plaintiffs, however, argue that they seek injunctive and declaratory relief against the DCA Defendants which is not barred by sovereign immunity.  The Plaintiffs also contend that the DCA Defendants waived sovereign immunity and rely primarily on the Deed of Easement and Restrictive Covenant executed by the HMFA and the Roizman Defendants.  The language at issue states:

18

> This Deed of Easement and Restrictive Covenant shall constitute an agreement between HMFA and the Owner and is enforceable in the courts of the State of New Jersey by HMFA or by an individual or individuals whether prospective, present or former occupants of the Building, who meet the low-income eligibility standards applicable in the Building under Section 42(g) of the Tax Code, said individual(s) being beneficiaries of the agreement which is expressed herein between the HMFA and the Owner.

(Sec. Am. Compl. ¶75.)  The Plaintiffs also rely on the following aversion in their complaint to support their argument that the DCA has waived sovereign immunity:

> Plaintiffs reasonably believe and aver that there exist similar documents waiving the immunity of the other state actors, in particular, waiving the immunity of Defendants New Jersey Department of Community Affairs Division of Housing, City of Camden Redevelopment Agency and City of Camden.

(Sec. Am. Compl. ¶9.)

The Plaintiffs also argue that the individual DCA Defendants are not entitled to qualified immunity.  The Plaintiffs maintain that the court must conclude that the DCA Defendants, acting in concert with the other named defendants, violated the Plaintiffs' rights to equal protection, due process and right to be free from racial steering and that these rights were clearly established at the time of the violation.  Therefore, the Plaintiffs argue that the DCA Defendants are not entitled to qualified immunity.

(Pls.' Br. at 18-19.)

Next, the Plaintiffs agree that the individual DCA Defendants cannot be sued under Title VI.  However, the Plaintiffs argue that their complaint states a claim against the

19

DCA as a state agency for violating Title VI in their implementation of the Section 8 Housing Voucher Program and that the Plaintiffs have been unlawfully barred from fully participating in that program because of they are African American and Hispanic.

Finally, Plaintiffs argue that they were not required to comply with the notice requirements of the New Jersey Tort Claims Act or the Contractual Liability Act.  Specifically, the Plaintiffs argue that they bring their tort and contract claims pursuant to Section 1983 and therefore, the Plaintiffs were not required to exhaust their state administrative remedies.

In addition, the Roizmann Defendants filed opposition to this motion to dismiss.  The Roizman Defendants argue that the DCA is a necessary and indispensable party pursuant to Fed. R. Civ. P. 19(a) because DCA currently holds the mortgage to the property at issue.  Further, the Roizman Defendants add that if any liability for an alleged manipulation of Section 8 Housing vouchers is imposed on the Roizman Defendants they would seek to assert cross-claims against the DCA.  Therefore, the Roizman Defendants urge the court not to dismiss the DCA.

In their reply, the DCA Defendants maintain that the complaint should be dismissed against them.  The DCA first notes that it does not dispute the proposition that the Eleventh Amendment does not apply to bar suits for purely prospective

20

relief; however, the DCA Defendants maintain that the Second Amended Complaint fails to identify any ongoing violations of federal law by the DCA, nor does it seek any prospective injunctive relief from the state agency.  The DCA also contends that the Second Amended Complaint does not allege sufficient facts to sustain personal capacity suits against the individual DCA defendants.  The DCA Defendants emphasize that the mere labeling of an individual as a personal-capacity defendant is not enough to defeat an otherwise sustainable claim of entitlement to Eleventh Amendment immunity and cites to <u>Will v. Michigan Dep't. of State Police</u>, 491 U.S. 58, 71 (1989).

The DCA Defendants also dispute the Plaintiffs' argument that sovereign immunity has been waived by the DCA.  First, the DCA Defendants note that the quoted language of the provision in the Deed of Easement allows for state court enforcement, not federal court enforcement.  Further, the DCA emphasizes that it was not a party to the agreement.  Finally, the DCA also argues that New Jersey officials do not have the power to surrender the state's sovereign immunity through contract and cites to <u>Allen v. Fauver</u>, 167 N.J. 69, 77 (2001).  Rather, the DCA maintains that a waiver of sovereign immunity requires clear and unambiguous consent by the state legislature.

Alternatively, the DCA Defendants reiterate their argument that qualified immunity is appropriate because the Plaintiffs'

Second Amended Complaint does not allege sufficient facts to
establish that the DCA Defendants violated the Plaintiffs'
clearly established constitutional rights.  In particular, the
Second Amended Complaint does not allege that the DCA Defendants
even knew of the 1992 financing agreement between Roizman and the
HMFA or the promise to convey rental units for one dollar.
Rather, the DCA Defendants maintain that the Complaint does
nothing but allege that the DCA Defendants acted in accordance
with the requirements of their DCA employment and are therefore
entitled to qualified immunity.

Finally, the DCA Defendants argue that the Plaintiffs' Title
VI claim against the DCA should be dismissed because the Second
Amended Complaint fails to provide the requisite factual
foundation for their Title VI claim and instead relies on
conclusory allegations that are factually baseless.

In response to the Roizman Defendants' opposition, the DCA
Defendants argue that Fed. R. Civ. P. 19(a) is a procedural
joinder mechanism and cannot serve as a basis for subject matter
jurisdiction if the case is otherwise barred under the Eleventh
Amendment.

**B. Analysis**

**1.  Eleventh Amendment Immunity**

Under the Eleventh Amendment to the U.S. Constitution,
"[t]he Judicial power of the United States shall not be construed

22

to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Unless a state clearly waives this sovereign immunity or the Congress abrogates it, the Eleventh Amendment precludes all claims under 42 U.S.C. § 1983 against a state.  Quern v. Jordan, 440 U.S. 332, 342 (1979). "A suit may be barred 'even though the state is not named a party to the action, as long as the state is the real party in interest.'" Carter v. City of Philadelphia, 181 F.3d 339, 347 (3d Cir. 1999) (quoting Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 658 (3d Cir. 1989)).

To determine if the state is the real party in interest, the court must determine whether the individual defendant who is pleading Eleventh Amendment immunity is, in fact, an "arm of the state." Chisolm v. McManimon, 275 F.3d 315, 323 (3d Cir. 2001). The Court "must consider the capacity in which the entity was acting when its actions gave rise to Plaintiff's claim." Id. at 324.

The Eleventh Amendment bars suit of state officials in their official capacity for anything other than injunctive relief unless the state has specifically waived that immunity or Congress has acted to abrogate that immunity under section five of the Fourteenth Amendment.  Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989).

23

It is clear and the parties do not dispute that DCA is a statutory department within the executive branch of the state of New Jersey and functions as an arm of the state.  N.J.S.A. 52:27D-1.  Therefore, absent a waiver or abrogation, sovereign immunity will bar Plaintiffs' claims against the DCA and the DCA employees who are being sued in their official capacity.

First, the court finds that the state has not waived sovereign immunity in this case.  The language in the Deed of Easement and Restrictive Covenant is insufficient to constitute a waiver of DCA's sovereign immunity as the DCA was not a party to the agreement.  In addition, the Plaintiffs' meager allegation that it believes documents exist establishing the waiver of DCA's sovereign immunity is inadequate to constitute a waiver and devoid of any factual basis.  It is clearly established that "a specific authority conferred by an enactment of the legislature is requisite if the sovereign is to be taken as having shed the protective mantle of immunity" and legislative consent to suit is "integral to the waiver of sovereign immunity." Allen v. Fauver, 167 N.J. 69, 73, 75 (2001).  Moreover, state officials are not empowered to waive sovereign immunity through contract.  Id. at 77.  In this case, the Plaintiffs point to no specific legislative enactment waiving sovereign immunity and provide no basis for their conclusory allegations of waiver in their complaint.  Therefore, the court finds that the DCA Defendants

have not waived their right to sovereign immunity under the
Eleventh Amendment.

The only claim alleged in Plaintiffs' complaint in which
Congress has abrogated sovereign immunity is Plaintiffs'
allegations against the DCA Defendants for violating Title VI.
Accordingly, the court finds and the Plaintiff does not contest
that all claims for damages against the DCA and the individual
DCA defendants sued in their official capacities must be
dismissed with the exception of the Plaintiffs' Title VI claim.

The Plaintiffs' argument that they seek prospective
injunctive relief against the DCA Defendants on the remaining
claims is meritless.  The Second Amended Complaint seeks money
damages and the equitable remedy of specific performance in
transferring the title of the respective Camden Townhouse units
to the Plaintiffs for one dollar.  The Second Amended Complaint
identifies no ongoing violation of federal law being committed by
the DCA Defendants which would require prospective injunctive
relief nor does it expressly seek prospective injunctive relief
as a remedy.  Therefore, the exception to Eleventh Amendment
immunity for prospective injunctive relief does not apply in this
case and all claims against the DCA and the claims against the
individual DCA Defendants in their official capacity will be
dismissed with the exception of Plaintiffs' Title VI claim.

The remaining issue before the court is whether the DCA

25

Defendants' Eleventh Amendment immunity extends to the
allegations against the individual DCA Defendants in their
personal capacities.

"[A] suit against a state official in his or her official
capacity is not a suit against the official but rather is a suit
against the official's office.  As such, it is no different from
a suit against the State itself."  <u>Will</u>, 491 U.S. at 71 (1989).
"Personal-capacity suits, on the other hand, seek to impose
individual liability upon a government officer for actions taken
under color of state law."  <u>Hafer v. Melo</u>, 502 U.S. 21, 25
(1991).  The Supreme Court clarified that in order to establish
personal liability against a state official in § 1983 action, "it
is enough to show that the official, acting under color of state
law, caused the deprivation of a federal right."  <u>Id.</u>  However,
though "the plaintiff in a personal-capacity suit need not
establish a connection to governmental policy or custom,
officials sued in their official capacities, may assert personal
immunity defenses."  <u>Id.</u>

The Supreme Court made clear that the "distinction between
official-capacity suits and personal-capacity suits is more than
a mere pleading device" because "officials sued in their personal
capacity come to the court as individuals."  <u>Id.</u> at 27.  The
Supreme Court rejected the argument that state officials could
not be sued in their personal capacity for actions taken in their

26

official capacity.  The Supreme Court reasoned that such a broad reading of the Eleventh Amendment would "absolutely immunize state officials from personal liability for acts within their authority" and "extend absolute immunity to all officers who engage in necessary official acts" which is unprecedented as state executive officials are not entitled to absolute immunity for their official actions.  Id. at 29.  The Supreme Court emphasized that while "imposing personal liability on state officers may hamper their performance of public duties . . . such concerns are properly addressed within the framework of our personal immunity jurisprudence." Id. at 31.

Applying the Supreme Court's reasoning to the instant action, the DCA Defendants' argument that the individual DCA Defendants were acting in their official capacities and thus should be entitled to Eleventh Amendment immunity must be rejected.  The Second Amended Complaint properly brings suit against the individual DCA Defendants in their personal capacity and thus the Eleventh Amendment does not apply to bar the Plaintiffs' claims.  A qualified immunity analysis is the appropriate vehicle for determining whether the personal capacity suits against the individual DCA Defendants should be dismissed.

## 2.  Qualified Immunity on Counts XI and XII

The Second Amended Complaint asserts five causes of action against the individual DCA Defendants in their personal capacity:

27

tortious interference with contract (Count I), intentional infliction of emotional distress (Count VIII); fraud and deceptive practices (Count X); violations of constitutional amendments, civil rights and other federal laws (Count XI); and conspiracy to violate Plaintiffs' constitutional rights (Count XII).

Counts I, VIII and X all arise under state tort law, despite Plaintiffs' conclusory and unsupported statement that these claims arise under Section 1983. The court will address whether these claims are properly pled under the New Jersey Tort Claims Act and Contractual Liability Act in Subsection 3 below. As to Counts XI and XII, the Court will consider whether qualified immunity is appropriate to immunize the individual DCA employees from suit.

As an "accommodation of competing values," qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where a governmental defendant was "plainly incompetent or . . . knowingly violate[d] the law," while immunizing a state officer who "made a reasonable mistake about the legal constraints on his actions." Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and citations omitted).

The Court's assessment of whether a defendant is entitled to qualified immunity hinges on two considerations. The Court must

28

determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." Id. (citation omitted).  If the Plaintiff has sufficiently alleged such a deprivation, the Court must address "whether the right that was [allegedly] violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (internal quotations and citations omitted).

The Court will address each of the individual DCA Defendants separately.  First, the Plaintiffs allege the following facts as to the actions of Defendants Charles A. Richman, Lori Grifa and Susan Bass-Levin:

79.  Defendants Richman, Grifa, Levin and Doria during their respective tenures as NJDCA Commissioner, pursuant to an unlawful custom, policy and practice of failing to exercise their statutory and other legal supervisory authority over Defendants Roizman and Camden Townhouses Associates II, L.P., in unlawful concert with Defendants Roizman and Camden Townhouses Associates II, L.P., recklessly approved loan applications that were unnecessary and unlawfully encumbered Plaintiffs' units.

80.  Defendants Richman, Grifa, Levin and Doria during their respective tenures as NJDCA Commissioner, pursuant to an unlawful custom, policy and practice of failing to exercise their statutory and other legal supervisory authority over Defendants Roizman and Camden Townhouses Associates II, L.P., in unlawful concert with Defendants Roizman and Camden Townhouses Associates II, L.P. to ensure that Defendants Roizman and Camden Townhouses Associates II, L.P. complied with the terms of the original and amended mortgages, deeds, restrictive covenants and easements related to the Camden Townhouses Broadway Street development between NJDCA, any of the Roizman Defendants, City of Camden Redevelopment Authority, City of Camden, NJHMFA, HUD and any third parties.

317(u). Defendants Roizman, Grifa, Levin, Richman, McCormick, NJDCA, NJHMFA, NJHMFA's "John Does and Jane Does," HUD, Thumar, HUD's "John Does and Jane Does," and City of Camden failed in [sic] intercede [sic] of Plaintiffs behalf to halt the known violations of Plaintiffs' constitutional, civil and other federal rights described herein. . .

(Sec. Am. Compl. ¶¶ 79-80.)

First, these allegations are not facts and are instead conclusory recitations of legal boilerplate which fail to satisfy the pleading requirements of Rule 8.  Second, even if the court were to accept these allegations as properly pleaded as fact, these allegations fail to establish that Defendants Richman, Grifa and Bass-Levin personally deprived the Plaintiffs of a constitutional right.

It is well settled that "[S]ection 1983 will not support a claim based on a respondeat superior theory of liability." Polk County v. Dodson, 454 U.S. 312, 325 (1981).  Rather, a defendant in a Section 1983 action "must have personal involvement in the alleged wrongs:  liability cannot be predicated solely upon the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Importantly, a plaintiff "must portray specific conduct by state officials which violates some constitutional right." Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970).

Here, the Plaintiffs' conclusory allegations are brought against Defendants Richman, Grifa and Bass-Levin solely because they held the position of Acting Commissioner of the DCA during

30

the relevant time period.  The Plaintiffs have not alleged any personal involvement of Defendants Richman, Grifa and Bass-Levin in the alleged harm suffered by the Plaintiffs.  There are no factual allegations in the Second Amended Complaint that Defendants Richman, Grifa or Bass-Levin were personally involved in the processing of the Plaintiffs' Section 8 Housing Vouchers or that Defendants Richman, Grifa or Bass-Levin had any personal contact with the Roizman Defendants.  It is clear that the Plaintiffs are including Defendants Richman, Grifa and Bass-Levin based on a theory of respondeat superior and not based on any personal involvement in the alleged wrongs.

Therefore, Defendants Richman, Grifa and Bass-Levin are entitled to qualified immunity and all claims against Defendants Richman and Grifa will be dismissed.  In addition, all claims against Defendant Susan Bass-Levin in her individual and official capacity as DCA Commissioner will be dismissed.[3]

However, the claims against Defendant Esochanghi and Defendant McCormick do plead specific facts that, when taken as true as the court is required to do on a motion to dismiss, allege a violation of Plaintiffs' constitutional rights.  In particular, the complaint alleges that Defendant Esochanghi and Defendant McCormick sent Plaintiff Bethea a back-dated document

---

[3] The claims against Defendant Susan Bass-Levin in her individual and official capacity as CEO of the Cooper Foundation will be address _infra_ in Section VIII.

31

entitled "Voucher - Housing Choice Voucher Program" which
unilaterally modified the terms of Plaintiff Bethea's 2009 annual
Section 8 Voucher.  These Defendants allegedly did not inform
Plaintiff Bethea of her right to appeal this modification.
Subsequently, the Second Amended Complaint alleges the Roizman
Defendants refused to accept Plaintiff Bethea' back-dated housing
voucher document.  Defendant McCormick then sent Plaintiff Bethea
a "Notice of Disapproval" stating that she was no longer
qualified as a low-income tenant and then allegedly proceeded to
steer Plaintiff Bethea and other class plaintiffs to a housing
project in another area of Camden by issuing new Section 8
Housing Vouchers for this different location.  (Sec. Am. Compl.
¶¶ 112-120.)

Rather than relocate to this alternate, allegedly crime-
ridden area, Plaintiff Bethea chose to remain in her apartment
and tendered a money order to the Roizman Defendants for one
dollar to buy the title to the property; however, Defendant
Roizman did not tender title to her.  Plaintiff Bethea alleges
she was unable to use her Section 8 housing voucher to pay the
rent at her apartment in the Camden Townhouses Associates II,
L.P. development through the concerted action of the Roizman
Defendants, McCormick and Esochanghi.  Consequently, Plaintiff
Bethea was under the constant threat of eviction and had to
vacate her apartment for failure to pay rent because of the

unlawful withholding of her Section 8 housing voucher and the
Roizman Defendants' refusal to tender title to her.  (Sec. Am.
Compl. ¶¶ 123-43.)  The Second Amended Complaint also alleges
Defendant McCormick took similar actions against several other of
the named Plaintiffs in the complaint in unilaterally modifying
and/or withholding their Section 8 housing vouchers.

These facts are sufficient to allege a violation of the
Plaintiffs' constitutional right to due process by Defendants
McCormick and Esochanghi.  Whether Defendant McCormick and
Defendant Esochanghi's actions were reasonable is unclear from
the face of the complaint and therefore, the qualified immunity
analysis is inappropriate at this time.

The qualified immunity analysis is typically inappropriate
for motions to dismiss for the very issue present in the analysis
of Defendants McCormick and Esochanghi - it is a fact sensitive
inquiry.  The Third Circuit has cautioned against dismissing a
case based on qualified immunity on a 12(b)(6) motion because "it
is generally unwise to venture into a qualified immunity analysis
at the pleading stage as it is necessary to develop the factual
record in the vast majority of cases." Newland v. Reehorst, 328
Fed. Appx. 788, 791 n.3 (3d Cir. 2009).  While the issue of
whether a right is clearly established and whether a reasonable
officer could have believed his actions were lawful are questions
of law for the court to decide, the Court does not consider facts

outside the pleadings in assessing these issues.

The Third Circuit has clearly held that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Thomas v. Independence Township, 463 F.3d 285, 291 (3d Cir. 2006).

In this case, Defendant McCormick and Defendant Esochanghi's entitlement to qualified immunity is not established on the face of the Plaintiffs' complaint as to Counts XI and XII.  Therefore, the court will deny Defendant McCormick and Defendant Esochanghi's motion to dismiss based on qualified immunity at this time.  However, this denial is without prejudice to Defendant McCormick and Defendant Esochanghi's raising the argument in a motion for summary judgment once sufficient discovery has been completed.

### 3.  Tort and Contract Claims

The Second Amended Complaint asserts four causes of action against the DCA Defendants which arise under state tort law: tortious interference with contract (Count I); fraudulent and deceptive trade practices (Count IV); intentional infliction of emotional distress (Count VIII); and fraud and deceptive business practices (Count X).

Despite Plaintiffs' contentions to the contrary, these four causes of action have no basis in federal law and are common law torts cognizable under state law.  Accordingly, Plaintiffs may

not bring these causes of action pursuant to 42 U.S.C. § 1983, as Section 1983 provides for redress of violations of the Constitution and laws of the United States and does not provide redress for violations of state tort law.  Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995)("Section 1983 . . . provides a remedy for the violation of rights created by federal law").  Therefore, the Plaintiffs were required to abide by the requirements of state law when filing the instant action; otherwise, these claims are barred by sovereign immunity.

The state legislature has waived sovereign immunity to permit certain tort suits and contract suits to be brought against a public entity pursuant to the New Jersey Tort Claims Act and Contractual Liability Act.

Tort claims against public entities and public employees are governed by the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:1-1 et seq.  See Velez v. City of Jersey City, 180 N.J. 284 (2004); Longo v. Santoro, 195 N.J. Super. 507, 514 (App. Div. 1984); Badalamente v. Monmouth County Prosecutor's Office, No. 08-2501, 2011 U.S. Dist. LEXIS 53457, *25 (D.N.J. May 17, 2011). The NJTCA requires that a notice of claim must be filed with the public entity not later than the ninetieth (90th) day after accrual of the underlying cause of action.  N.J. Stat. Ann. § 59:8-8(a).  Failure to file the required notice will result in the dismissal of the Plaintiff's tort claims. N.J. Stat. Ann. §

35

59:8-3 ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter.").

It is undisputed that the DCA Defendants are public entities and employees and therefore, the notice provisions of the NJTCA apply to Plaintiffs' tort claims. The Plaintiffs' complaint does not allege that they filed notice in accordance with the statute. Therefore, the Plaintiffs' complaint fails to state a claim for tortious interference with contract (Count I); fraudulent and deceptive trade practices (Count IV); intentional infliction of emotional distress (Count VIII); fraud and deceptive business practices (Count X) and these claims must be dismissed.

The Second Amended Complaint also alleges a cause of action against the DCA for breach of contract (Count II) and alternatively unjust enrichment (Count III). These causes of action are governed by the Contractual Liability Act, N.J.S.A. 59:13-5. Like the Tort Claims Act, the Contractual Liability Act requires that written notice of a claim be served within ninety days of the claim's accrual and failure to comply with this notice requirement results in dismissal. N.J.S.A. 59:13-5; County of Morris v. Fauver, 153 N.J. 80, 107-07, 707 A.2d 958 (1998). In addition, the Contractual Liability Act only waives the state's immunity with respect to claims "arising out of an

36

express contract or a contract implied in fact." <u>N.J.S.A.</u> 59:13-3.  The state expressly retained immunity from "claims based upon implied warranties or contracts implied in law." <u>Id.</u>

In this case, the Plaintiffs have failed to plead compliance with the Contractual Liability Act notice requirements in order to sustain their breach of contract claim.  Since their claim for breach of contract against the DCA Defendants arises out of state law, the Plaintiffs' argument that this claim is brought pursuant to Section 1983 is without merit.  Therefore, the Plaintiffs were required to comply with the notice requirements of the Contractual Liability Act in filing their claim for breach of contract, and since the Plaintiffs have failed to allege compliance in their Second Amended Complaint, this claim will be dismissed.

The Plaintiffs' unjust enrichment claim against the DCA is barred by sovereign immunity.  "Unjust enrichment is not an independent theory of liability, but is the basis for a claim for quasi-contractual liability." <u>Goldsmith v. Camden County Surrogate's Office</u>, 408 N.J. Super. 376, 382 (App. Div. 2009.) Quasi-contractual claims for liability are "synonymous with a contract implied in law, and contracts implied in law are specifically excluded from the scope of state liability under the Contractual Liability Act." <u>Allen v. Fauver</u>, 327 N.J. Super. 14, (App. Div. 1999).  As the state has expressly retained its

immunity from claims based upon contracts implied in law,
Plaintiffs' unjust enrichment claim against the DCA Defendants is
barred and will be dismissed with prejudice.

### 4. Title VI Claims

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d,
prohibits intentional discrimination based on race in any program
that receives federal funding. Alexander v. Sandoval, 532 U.S.
275, 282-83 (2001); South Camden Citizens in Action v. NJ Dept.
of Environ. Protect., 274 F.3d 771 (3d Cir. 2001). Individual
liability may not be asserted under Title VI because an
individual is not a "program" receiving federal funds. Whitfield
v. Notre Dame Middle School, 412 Fed. Appx. 517, 521 (3d Cir.
2011)(citing Shotz v. City of Plantation, Fla., 344 F.3d 1131,
1170 n/12 (11th Cir. 2003) and Buchanan v. City of Bolivar,
Tenn., 99 F.3d 1352, 1356 (6th Cir. 1996)).

The parties do not dispute that a Title VI claim cannot be
brought against an individual and therefore, the Title VI claims
brought against the individual DCA Defendants will be dismissed.
Whitfield, 412 Fed. Appx. at 521 ("Individual liability may not
be asserted under Title VI."). The parties also agree that the
DCA receives federal funding and is a "program" within the
meaning of Title VI. Therefore, the court will determine whether
the Plaintiffs have alleged a viable Title VI claim against the
DCA.

Title VI provides that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  The Supreme Court has held that Title VI prohibits "only intentional discrimination" on the basis of race.  <u>Alexander</u>, 532 U.S. at 280.

In this case, the Second Amended Complaint does not allege that any of the DCA's policies, general practices or rules foster intentional discrimination based on race.  Nor does the complaint allege that the DCA has engaged in a systematic practice or pattern of intentional discrimination.  Rather, the complaint offers a conclusory allegation that the DCA intentionally discriminated against the Plaintiffs on the basis of race when issuing their housing vouchers and fails to substantiate this allegation with any plausible factual basis.  This merely conclusory allegation of racial discrimination is insufficient to meet the pleading standard required under Rule 8.

Therefore, as the Plaintiffs have failed to allege any facts to establish that the DCA intentionally discriminated against the Plaintiffs based on their race, the Plaintiffs' Title VI claim will be dismissed for failure to state a claim.

### 5.   Remaining Federal Claims in Counts X and XI

Finally, as the court is unable to conclude whether Defendant McCormick and Defendant Esochanghi are entitled to qualified immunity given the early procedural posture of the case, the court will examine whether the Plaintiffs' remaining claims for violations of constitutional amendments, civil rights and other federal laws (Count X) and conspiracy to violate Plaintiffs' constitutional, civil rights and other rights (Count XI) are sufficiently alleged to meet the requirements of Rule 8.

The Plaintiffs allege that Defendants McCormick and Esochanghi sent Plaintiff Bethea a back-dated document entitled "Voucher - Housing Choice Voucher Program" which unilaterally modified the terms of Plaintiff Bethea's 2009 annual Section 8 Voucher.  These Defendants allegedly did not inform Plaintiff Bethea of her right to appeal this modification.  Subsequently, the Second Amended Complaint alleges the Roizman Defendants refused to accept Plaintiff Bethea' back-dated housing voucher document.  Defendant McCormick then sent Plaintiff Bethea a "Notice of Disapproval" stating that she was no longer qualified as a low-income tenant and then allegedly proceeded to steer Plaintiff Bethea and other class plaintiffs to a housing project in another area of Camden by issuing new Section 8 Housing Vouchers for this different location.  The Second Amended Complaint also alleges Defendant McCormick took similar actions

40

against several other of the named Plaintiffs in the complaint in unilaterally modifying and/or withholding their Section 8 housing vouchers.

After preliminarily alleging these specific facts, the Second Amended Complaint in Count XI then alleges in conclusory terms that all defendants named in this action violated the Plaintiffs' constitutional rights under the First, Fifth, Ninth, Thirteenth and Fourteenth Amendments, the United States Housing Act, Title VIII of the Civil Rights Acts, the Fair Housing Act, and "other constitutional provisions, federal statutes and state laws." (Sec. Am. Compl. ¶ 317(a)-(v).)

The court is unable to make sense of the Plaintiffs' conclusory statements in Count XI. The Plaintiffs' allegations have little relationship to the facts plead in the preliminary portion of the Plaintiffs' Second Amended Complaint and instead are so broad as to encompass the entire universe of federal and state law. This is clearly violative of Rule 8 which requires a plaintiff to set forth a **"short and plain statement of the claim** showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2).

The Supreme Court has been explicit that a plaintiff is obligated to "provide the 'grounds' of his 'entitle[ment] to relief,'" which requires more than "labels and conclusions." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S.

265, 286 (1986)).  The complaint must give the defendant "fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555.  Therefore, a complaint must contain facially plausible claims, that is, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Twombly, 550 U.S. at 556.

In the instant case, the court is unable to conclude what claim for relief is sought and Plaintiffs' broad statements in Count XI that all the named defendants violated a multitude of federal laws and constitutional provisions, reiterated over and over, fails to meet the requirements of Rule 8.  Therefore, the court will dismiss Count XI in its entirety.

Similarly, Count XII suffers from the same deficiencies as Count XI in that is pled without specificity and conclusively alleges that all defendants conspired to violate "Plaintiffs' constitutional, civil and other federal rights described herein." (Sec. Am. Compl. ¶ 321.)  It is well established that a conspiracy claim must be plead with factual specificity.  "Broad, conclusory allegations, unsupported by specific facts implicating specific defendants are insufficient to state a claim upon which relief can be granted" under Section 1985.  Martin v. Delaware Law School of Widener Univ., 625 F. Supp. 1288 (D.C. Del. 1985)(citing Negrich v. Hohn, 379 F.3d 213, 215 (3d Cir. 1967)),

42

<u>aff'd.</u>, 884 F.2d 1384 (3d Cir. 1989).

However, dismissal of Counts XI and XII will be without prejudice as the deficiencies discussed herein may be cured by amendment.  The court cautions the Plaintiffs that this amendment will need to carefully plead any violations of federal law with specificity and allege the particular federal law at issue, which named defendants are accountable, and state the factual allegations which establish the required elements of each claim. A catchall allegation which conclusively states that all defendants "violated the United States Housing Act of 1937, 42 U.S.C. §§ 1437 <u>et</u> <u>seq.</u>; Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1983, 1981, 1982, 1985(3) and 1988; Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601 <u>et</u> <u>seq.</u>, the Fifth, Ninth, Thirteenth and Fourteenth Amendments to the United States Constitution, and other constitutional provisions, federal statutes and state laws" will not suffice and will result in the Plaintiffs' federal claims being dismissed with prejudice.

### 6.  Opposition of the Roizman Defendants

The Roizman Defendants' opposition is without merit.  The Roizman Defendants argue that the DCA is an indispensable party within the meaning of the compulsory joinder rule, Fed. R. Civ. P. 19(a), and therefore, the DCA should not be dismissed as a defendant.  Fed. R. Civ. P. 19(a) is a federal rule of civil procedure and not a basis for subject matter jurisdiction against

43

a sovereign entity.  It is well settled that the federal rules of civil procedure "shall not be construed to extend or limit the jurisdiction" of the federal court.  Fed. R. Civ. P. 82.  <u>See also N.J. Dep't of Envt'l Protect. v. Gloucester Ent'l Mgmt. Servs.</u>, 668 F. Supp. 404 (D.N.J. 1987)(holding sovereign immunity doctrine bars joinder under Rule 19(a)).

Therefore, the Roizman Defendants opposition is without merit and will not affect the above analysis of the court.

**C. Conclusion as to DCA Defendants**

The court will grant the DCA Defendants' motion to dismiss. First, the DCA is entitled to Eleventh Amendment sovereign immunity on all claims with the exception of Title VI, the tort claims and the contract claims.  This immunity does not extend to the individual DCA Defendants Richman, Grifa, Bass-Levin McCormick and Esochanghi.  Defendants Richman, Grifa and Bass-Levin, in their individual and official capacities as former DCA Commissioners, are entitled to qualified immunity as the Second Amended Complaint fails to allege facts which establish that Richman, Grifa or Bass-Levin had any personal involvement in the alleged harm to the Plaintiffs.  It is unclear to the court at this time whether Defendants McCormick and Esochanghi are entitled to qualified immunity as the Second Amended Complaint alleges facts sufficient to establish McCormick's and Esochanghi's personal involvement but at this early procedural

44

stage of the case, the court cannot engage in the fact sensitive inquiry required to determine if qualified immunity applies. Therefore, the court will deny the DCA Defendant's motion for qualified immunity as to McCormick and Esochanghi without prejudice to these defendants raising the issue on a motion for summary judgment after sufficient opportunity for discovery has transpired.

The Plaintiffs' tort claims will be dismissed against the DCA Defendants as the Plaintiffs have failed to plead compliance with the notice requirements of the NJTCA.  Likewise, the Plaintiffs' claims for breach of contract will be dismissed because the Plaintiffs' have failed to plead compliance with the notice requirements of the Contractual Liability Act.  The Plaintiffs' claims for unjust enrichment against the DCA will be dismissed with prejudice at this quasi-contractual theory of liability is barred by the Contractual Liability Act.

Plaintiffs' Title VI claims will be dismissed as to the individual DCA defendants as individuals cannot be found liable under Title VI.  The Plaintiffs' Title VI claims against the DCA will also be dismissed as the Plaintiffs have failed to allege facts sufficient to support a finding that the DCA acted with the intention to discriminate against the Plaintiffs based on their race.

Finally, Plaintiffs' remaining federal claims alleged in

Counts XI and XII will be dismissed against Esochanghi and McCormick as they fail to state a claim upon which relief can be granted.  The Plaintiffs will be given leave to file a motion to amend their complaint to include cognizable Section 1983 claims against Esochanghi and McCormick in order to correct the above deficiencies, consistent with this Opinion.  Any proposed amendment must be plead with specificity against McCormick and Esochanghi and may not be based on broad conclusory and unsupported allegations.

## V.   New Jersey Housing and Mortgage Financing Agency's Motion to Dismiss

The Second Amended Complaint brings the following causes of action against the New Jersey Housing and Mortgage Financing Agency: tortious interference with contract (Count I); breach of contract (Count II); unjust enrichment (Count III); fraudulent and deceptive trade practices (Count IV); specific performance (Count V); intentional infliction of emotional distress (Count VIII); violations of constitutional amendments, civil rights and other federal laws (Count XI); and conspiracy under the color of state law to violate Plaintiffs' constitutional rights, civil rights and other rights (Count XII).

### A. The Parties' Arguments

The New Jersey Housing and Mortgage Financing Agency ("NJHMFA") brings its own motion to dismiss which raises

substantially similar arguments as the DCA Defendants.  In particular, the NJHMFA argues that it is entitled to sovereign immunity for all claims as it is a state agency created by the legislature and functions as an arm of the state.  See N.J.S.A. 55:14K-2(e).  The NJHMFA contends that Plaintiffs' Title VI claim should be dismissed because it fails to allege any facts sufficient to support a finding that the NJHMFA intentionally discriminated against the Plaintiffs on the basis of race. Finally, as to the tort and contract claims, the NJHMFA argues that the Plaintiffs failed to comply with the notice requirements of the New Jersey Tort Claims Act and Contract Liability Act and therefore cannot sustain those claims.

The Plaintiffs likewise raise similar arguments in opposition to the NJHMFA'S motion to dismiss as they raised in opposition to the DCA Defendant's motion to dismiss.  The Plaintiffs argue that the NJHMFA waived sovereign immunity by entering into the Regulatory Agreement and Deed of Easement and Restrictive Covenant with the Roizman Defendants.  In addition, the Roizman Defendants also oppose the NJHMFA's motion to dismiss and argue that the NJHMFA is a necessary and indispensable party pursuant to Fed. R. Civ. P. 19(a).  The Roizman Defendants also maintain that pending the completion of discovery, they may bring a cross claim against the NJHMFA.

For substantially the same reasons articulated above in

Section III, the court will grant the NJHMFA's motion to dismiss.

### B. Analysis

#### 1. Sovereign Immunity

It is clear and the parties do not dispute that NJHMFA is a statutory agency created by the legislature of the State of New Jersey and functions as an arm of the state.  See N.J.S.A. 55:14K-2(e).  As discussed above in subsection IV.B.1, unless a state clearly waives this sovereign immunity or the Congress abrogates it, the Eleventh Amendment precludes all claims under 42 U.S.C. § 1983 against a state.  Quern v. Jordan, 440 U.S. 332, 342 (1979).  State sovereign immunity also extends to state agencies and to state officers who act on behalf of the state.  Natural Resources Defense Council v. California DOT, 96 F.3d 420, 421 (9th Cir. 1996)(citing Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993)).

The Plaintiffs argue that the NJHMFA waived sovereign immunity by entering into the Deed of Easement and Restrictive Covenant with the Roizman Defendants.  The language at issue states:

> This Deed of Easement and Restrictive Covenant shall constitute an agreement between HMFA and the Owner and is enforceable in the courts of the State of New Jersey by HMFA or by an individual or individuals whether prospective, present or former occupants of the Building, who meet the low-income eligibility standards applicable in the Building under Section 42(g) of the Tax Code, said individual(s) being beneficiaries of the agreement which is expressed herein between the HMFA and the Owner.

48

(Sec. Am. Compl. ¶8.)

The court finds that this language is insufficient to constitute a waiver of NJHMFA's sovereign immunity. First, as explained above in subsection III.1, it is clearly established that "a specific authority conferred by an enactment of the legislature is requisite if the sovereign is to be taken as having shed the protective mantle of immunity" and legislative consent to suit is "integral to the waiver of sovereign immunity." Allen v. Fauver, 167 N.J. 69, 73, 75 (2001). Moreover, state officials are not empowered to waive sovereign immunity through contract. Id. at 77.

Even if a contract could waive sovereign immunity, here, the language in the Deed of Easement and Restrictive Covenant is insufficient to constitute such a waiver. Without legislative consent to suit, this document alone falls short of the requisite legislative enactment and lacks the ability to waive sovereign immunity.

Further, the language of the Deed of Easement and Restrictive Covenant only provides that suit may be brought to enforce the agreement "in the courts of the State of New Jersey." This language does not permit a party to enforce the provisions of this document in federal court; instead, it contemplates enforcement by litigation in a New Jersey state court.

Therefore, NJHMFA cannot be deemed to have waived sovereign

49

immunity by entering into the Deed of Easement and Restrictive
Covenant.

However, as discussed above, Congress has abrogated
sovereign immunity for claims brought pursuant to Title VI.
Therefore, a cognizable claim under Title VI would not be barred
by NJHMFA's immunity.  In addition, the state legislature has
permitted certain tort suits and contract suits to be brought
against a public entity pursuant to the New Jersey Tort Claims
Act and Contractual Liability Act, which will be discussed below.
The rest of Plaintiffs' claims against the NJHMFA are barred by
sovereign immunity.

### 2. Tort Claims and Contract Claims

The Plaintiffs have failed to plead compliance with the
notice requirements of the New Jersey Tort Claims Act and
Contractual Liability Act.  Further, the state has not waived its
immunity as to the quasi-contractual claim of unjust enrichment.
Therefore, for the reasons expressed in subsection IV.B.3 above,
Plaintiffs' claims for tortious interference with contract (Count
I); breach of contract (Count II); unjust enrichment (Count III);
fraudulent and deceptive trade practices (Count IV); specific
performance (Count V); and intentional infliction of emotional
distress (Count VIII) will be dismissed as to the NJHMFA.

### 3. Title VI Claims

As explained above, Title VI requires a plaintiff to plead

50

facts sufficient to establish that a program which receives federal funding intentionally discriminated against the plaintiff based on race.  Alexander v. Sandoval, 532 U.S. 275, 282-83 (2001); South Camden Citizens in Action v. NJ Dept. of Environ. Protect., 274 F.3d 771 (3d Cir. 2001).

In this case, the Plaintiffs have failed to allege facts to support their conclusory allegation that the NJHMFA discriminated against the Plaintiffs based on their race.[4]   The complaint does not allege that any of the NJHMFA's policies, general practices or rules foster intentional discrimination based on race.  Nor does the complaint allege that the NJHMFA has engaged in a systematic practice or pattern of intentional discrimination. The Second Amended Complaint does not even set forth facts to establish that any meetings or communication took place between NJHMFA and any of the other parties after the execution of the Deed of Easement and Restrictive Covenant, such that NJHMFA would know the identity or racial background of the Plaintiffs or tenants residing in the Camden Townhouses Broadway II development.

As there are no facts alleged in the complaint to support

---

[4] The NJHMFA also argues that Title VI liability is inappropriate because it is not a program which receives federal funds.  As the court is deciding the motion to dismiss based on the Plaintiffs' failure to allege facts to support a finding of intentional discrimination, the court will not address the issue of whether the NJHMFA receives federal funds and is therefore subjected to Title VI liability.

the Plaintiffs' conclusory allegation that the NJHMFA violated Title VI, the Plaintiffs' Title VI claim against the NJHMFA fails to satisfy the pleading requirements of Rule 8 and must be dismissed.

### 4.   Opposition of the Roizman Defendants

For the reasons discussed above in subsection IV.B.6, the Roizman Defendants' opposition to NJHMFA's motion to dismiss is without merit.

### C. Conclusion as to NJHMFA

The NJHMFA's motion to dismiss will be granted.  The NJHMFA is entitled to sovereign immunity.  While Congress has abrogated the state's sovereign immunity as to Title VI claims, the Plaintiffs' have failed to allege facts sufficient to support a finding that the NJHMFA discriminated against the Plaintiffs on the basis of their race.  Further, the Plaintiffs have failed to allege compliance with the New Jersey Tort Claims Act and Contractual Liability Act and are therefore barred from bringing these state law claims against the NJHMFA.  The remainder of Plaintiffs' federal claims, in addition to being insufficient plead as discussed in subsection III.5 above, are also barred by NJHMFA's sovereign immunity.

Therefore, the Plaintiffs' complaint as to the NJHMFA will be dismissed.

**VI.  CRA Defendants' Motion to Dismiss**

The Camden Redevelopment Agency and Olivette Simpson ("CRA Defendants") also filed a motion to dismiss the Plaintiffs' complaint.  As alleged in the complaint, the Camden Redevelopment Agency is the local agency responsible for coordinating all the City of Camden land use development policy and programming activities. (Sec. Am. Compl. ¶ 58.)  The Camden Redevelopment Agency is also responsible for working with the City's Department of Development and Planning on relocation efforts.  (Sec. Am. Compl. ¶ 58.)  Defendant Olivette Simpson is the Director of Housing at the Camden Redevelopment Agency.  (Sec. Am. Compl. ¶ 57.)  The Plaintiffs' complaint brings suit against Defendant Simpson in her official and individual capacities.  (Sec. Am. Compl. ¶ 57.)

The Second Amended Complaint alleges that on or about November 5, 1992, the Camden Redevelopment Agency sold 65 tracts of land and improvements thereon to Defendant Camden Townhouses II Associates, LP for one hundred seventy-five thousand dollars ($175,000) and an additional forty thousand dollar ($40,000) administrative fee.  (Sec. Am. Compl. ¶ 62.)  Pursuant to a contemporaneous agreement with Defendant Camden Townhouses II Associates, the 65 tracts of land and improvements were to be developed into 91 affordable rental housing units.  (Sec. Am. Compl. ¶ 62.)  After acquiring loans from Defendants the New

Jersey Housing and Mortgage Finance Agency, the City of Camden and New Jersey Department of Community Affairs, Defendant Camden Townhouses II Associates constructed the affordable units on the 65 tracts of land.  (Sec. Am. Compl. ¶¶ 63-69.)  Aside from this initial sale of the 65 tracts of land, the Second Amended Complaint does not allege any further involvement of the CRA Defendants in the development of the Camden Townhouses II housing project or the Plaintiffs' subsequent residence therein.

The Second Amended Complaint goes on to allege that in 2004, the Camden Redevelopment Agency and the City of Camden were revising its City of Camden Master Plans and the area in which Plaintiffs' low income housing units were located was designated as a prime redevelopment area.  The Second Amended Complaint then alleges the City of Camden and the Camden Redevelopment Agency began to develop the Cooper Plaza Redevelopment Plan and did not notify the Plaintiffs or any of the residents at Camden Townhouses II of the impact of the Cooper Redevelopment Plan on their alleged vested or soon to be vested property rights.  (Sec. Am. Compl. ¶¶ 99-100.)

The Second Amended Complaint brings the following causes of action against the CRA Defendants:  tortious interference with contractual relations (Count I); intentional infliction of emotional distress (Count VIII); violations of constitutional amendments, civil rights and other federal laws (Count XI); and

54

conspiracy under the color of state law to violate Plaintiffs'
constitutional rights, civil rights and other rights (Count XII).
All of these counts are brought against "All defendants" and
there are no specific counts brought solely against the CRA
defendants.

## A. The Parties' Arguments

The CRA Defendants argue that the Plaintiffs' complaint
against them must be dismissed and raise similar arguments
presented in the DCA Defendants' motion to dismiss.  The CRA
Defendants argue that they are public entities and employees
within the meaning of the New Jersey Tort Claims Act and
therefore, notice was required prior to filing any tort claims
against them.  Accordingly, as compliance with the New Jersey
Tort Claims Act was not alleged in the complaint, Counts I and
VIII should be dismissed.

In addition, the CRA Defendants argue that the Second
Amended Complaint is devoid of any factual allegations that the
CRA Defendants participated in any alleged wrongful conduct.
Moreover, the CRA Defendants contend that Counts XI and XII are
not plead with the required specificity under Rule 8 and should
be dismissed for failure to state a claim.

The Plaintiffs make the same arguments in opposition that
were made against the DCA Defendants, addressed in Section III
above.  The Roizman Defendants also filed opposition to the

55

motion to dismiss and again argues that the CRA is a necessary and indispensable party to the litigation pursuant to Fed. R. Civ. P. 19(a).

**B. Analysis**

**1. Tort Claims**

It is clear and the parties do not dispute that the Camden Redevelopment Agency is a public entity and Olivette Simpson, as the agency's Acting Director of Housing, is a public employee as defined by the New Jersey Tort Claims Act.  As discussed above in subsection IV.B.3, tort claims against public entities and public employees are governed by the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:1-1 et seq.  See Velez v. City of Jersey City, 180 N.J. 284 (2004).  The NJTCA requires that a notice of claim must be filed with the public entity not later than the ninetieth (90th) day after accrual of the underlying cause of action.  N.J.S.A. 59:8-8(a).  Failure to file the required notice will result in the dismissal of the Plaintiff's tort claims. N.J. Stat. Ann. 59:8-3.

The NJTCA defines public entity broadly and "includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1-3.  The Camden Redevelopment Agency is a local redevelopment agency, which is an instrumentality of the City of Camden, pursuant to the Local Redevelopment and

56

Housing Law, N.J.S.A. 40A:12A-1, et seq.  Therefore, the Camden
Redevelopment Agency is a public entity as defined by the NJTCA
and Olivette Simpson, as the agency's Acting Director of Housing,
is a public employee.

Accordingly, the notice provisions of the NJTCA apply and
failure to comply with these notice provisions requires
dismissal.  In this case, the Second Amended Complaint does not
allege compliance with the NJTCA notice requirements.
Consequently, the Plaintiffs have failed to state a claim against
the CRA Defendants for tortious interference with contract or
intentional infliction of emotional distress.

Therefore, Counts I and VIII of the Plaintiffs' complaint
will be dismissed as to the CRA Defendants.

### 2. Remaining Federal Claims

In the preliminary allegations of the Second Amended
Complaint, the Plaintiffs allege the following facts specifically
against the CRA Defendants:  (1) the CRA did not notify
Plaintiffs of the consequences of adoption of the Cooper Plaza
Redevelopment Plan upon Plaintiffs' alleged rights under the Deed
of Easement and Restrictive Covenant; however, the Plaintiffs do
not allege nor do they dispute that the CRA Defendants were not a
party to the Deed of Easement and Restrictive Covenant (Sec. Am.
Compl. ¶ 100); (2) the CRA and Olivette Simpson conspired to
create a redevelopment plan that excluded Plaintiffs from the

57

Cooper Plaza redevelopment area (Sec. Am. Compl. ¶ 103); (3) the CRA had knowledge of alleged wrongful conduct by the Roizman Defendants and failed to stop the conduct (Sec. Am. Compl. ¶¶ 230, 245).

After alleging these facts against the CRA Defendants, the Plaintiffs then make the conclusory claim that all defendants, including the CRA defendants, violated an amalgamation of Plaintiffs' federal constitutional and civil rights (Count XI) and conspired with all the other defendants to violate Plaintiffs' civil rights (Count XII).

As discussed above in subsection IV.B.5, the court is unable to make sense of the Plaintiffs' conclusory statements in Count XI and Count XII as applied to the CRA Defendants.  The Plaintiffs' allegations have little relationship to the facts plead in the preliminary portion of the Plaintiffs' Second Amended Complaint and instead are so broad as to encompass the entire universe of federal and state law.  This is clearly violative of Rule 8 which requires a plaintiff to set forth a "**short and plain statement of the claim** showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8 (a)(2).

Due to the generality and vagueness of Plaintiffs' allegations in Counts XI and XII, the complaint fails to give the defendants "fair notice of what the claim is and the grounds upon which it rests."  <u>Twombly</u>, 550 U.S. at 555.  This is especially

true in the case of the CRA Defendants because the Plaintiffs' complaint does not specifically name the CRA Defendants in any count, but rather includes the CRA Defendants in their sweeping catchall designation of "All Defendants" in Counts XI and XII.

Therefore, as discussed above, Counts XI and XII of the Second Amended Complaint is plead without specificity and fails to meet the requirements of Rule 8.  Accordingly, the Court will dismiss Counts XI and XII in their entirety.

### 3. Opposition of the Roizman Defendants

As discussed above in subsection IV.B.6 above, the Roizman Defendants' opposition to the CRA Defendants' motion to dismiss is without merit.  Fed. R. Civ. P. 19(a) is a rule of civil procedure which does not extend the court's jurisdiction and will not cure the pleading deficiencies of the Plaintiffs' Second Amended Complaint.

### C. Conclusion as to the CRA Defendants

The CRA Defendants' motion to dismiss will be granted. Counts I and VIII fail to allege compliance with the notice requirements of the NJTCA and must be dismissed.  Counts XI and XII are not plead with the specificity required in Rule 8 and will also be dismissed.  As these are the only claims against the CRA defendants, the court will dismiss the Second Amended Complaint as to the CRA defendants in its entirety.

59

## VII.  Federal Defendants' Motion to Dismiss

Defendants the United States Department of Housing and Urban
Development [HUD] and Balu Thumar, its Acting Director of Public
Housing in New Jersey (collectively "Federal Defendants") also
filed a motion to dismiss.

The Second Amended Complaint alleges that HUD and Defendant
Thumar, as the Acting Regional Director Office of Public Housing,
and federal employee of HUD, were responsible for making policies
for the implementation of the laws of the United States regarding
the distribution of the low-income housing voucher program.
(Sec. Am. Compl. ¶¶ 53, 55.)  The Plaintiffs also allege that HUD
Defendant Thumar were responsible for the supervisory oversight
of all federally funded low-income housing developments and
responsible for ensuring that the Roizman Defendants, DCA and
NJHMFA complied with federal laws.  (Sec. Am. Compl. ¶¶ 53, 55.)
The Second Amended Complaint then alleges that Defendant Thumar,
during his tenure as Acting HUD Director, pursuant to an unlawful
custom, policy and practice of failing to exercise his statutory
and other legal supervisory authority over the Roizman
Defendants, DCA, CRA, City of Camden and NJHMFA acted in concert
with these defendants to recklessly approve loan applications
that were unnecessary and unlawfully encumbered Plaintiffs' units
and complied with the terms of the original and amended
mortgages, deeds, restrictive covenants and easements related to

the Camden Townhouses Broadway Street development.  (Sec. Am.
Compl. ¶¶ 83, 84.) These are the only factual allegations brought
against the Federal Defendants in the Second Amended Complaint.

The Plaintiffs then allege five causes of action against the
Federal Defendants: tortious interference with contract (Count
I); intentional infliction of emotional distress (Count VIII);
violations of constitutional amendments, civil rights and other
federal laws (Count XI); conspiracy under the color of state law
to violate Plaintiffs' constitutional rights, civil rights and
other rights (Count XII); and a <u>Bivens</u> claim against Defendant
Thumar for violation of Plaintiffs' constitutional rights (Count
XIII).

**A. The Parties' Arguments**

The Federal Defendants argue that the Second Amended
Complaint should be dismissed against them.  First, the Federal
Defendants maintain that the Plaintiffs have failed to comply
with the pleading requirements of Rule 8 and the Second Amended
Complaint does not state a claim upon which relief can be granted
against the Federal Defendants.  Second, the Federal Defendants
argue that the tort claims against them should be dismissed
because the Plaintiffs have failed to comply with the
requirements of the Federal Tort Claims Act.  The Federal
Defendants also argue that the remaining federal claims raised in
Counts XI and XII are inapplicable against HUD.  Finally, the

Federal Defendants maintain that the Second Amended Complaint is not plead with the requisite factual specificity to maintain a <u>Bivens</u> claim against Defendant Thumar.

The Plaintiffs filed opposition and make similar arguments which have already been addressed <u>supra</u>. The Plaintiffs do not dispute that they have not complied with the requirements of the Federal Tort Claims Act, but instead maintain that their action is properly brought against the Federal Defendants under <u>Bivens</u>. The Plaintiffs also do no not contest in their opposition that the federal claims raised in Count XI are inapplicable as to HUD, which is a federal agency. (Pls.' Br. at 41.) The Plaintiffs, however, maintain that they have properly plead sufficient facts to support a <u>Bivens</u> claim against Thumar.[5] The Roizman

---

[5] Alternatively, the Plaintiffs argue that it is premature to dismiss their <u>Bivens</u> claim against Defendant Thumar without giving the Plaintiffs the opportunity to conduct discovery. This argument ignores relevant Supreme Court precedent which has squarely rejected this argument. The Supreme Court has emphasized:

> Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.

<u>Iqbal</u>, 129 S.Ct. at 1950. Where an official may be entitled to qualified immunity, the Supreme Court has explained that qualified immunity is:

> Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal **before the commencement of discovery**. . . . The entitlement is an immunity from suit rather than a mere defense to

Defendants did not oppose the Federal Defendants' motion to dismiss.

### B. Analysis

#### 1. Sovereign Immunity

It is well established that the United States has sovereign immunity except where it consents to be sued.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  Such consent to suit "must be 'unequivocally expressed' in statutory text, and cannot simply be implied." Adeleke v. United States, 355 F.3d 144, 150 (2d Cir. 2004)(citing United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992)).  Moreover, any waiver of sovereign immunity will be strictly construed in favor of the sovereign. Lane v. Pena, 518 U.S. 187, 192 (1996).  In the absence of such a waiver of immunity, one cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against any individual federal officers in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).

---

liability.

Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)(emphasis added).

Therefore, the court finds the Plaintiffs' alternative argument that they are entitled to discovery prior to conducting a qualified immunity analysis for Defendant Thumar without merit.

It is clear and undisputed that HUD is a federal agency and Defendant Thumar, as the HUD's Acting Director of Public Housing in New Jersey, is a federal employee.  Accordingly, HUD is entitled to sovereign immunity and Defendant Thumar, to the extent he is sued in his official capacity as Acting Director of Public Housing, is also entitled to sovereign immunity.  In the absence of a waiver, the Plaintiffs' claims against HUD and Defendant Thumar in his official capacity must be dismissed.

### 2. Tort Claims

The Federal Tort Claims Act is a partial waiver of the sovereign immunity of the United States and it gives a district court exclusive jurisdiction over civil actions:

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, ... [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995) (quoting 28 U.S.C. § 1346(b)); see also Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 477 (1994); United States v. Muniz, 374 U.S. 150 (1963).

The FTCA requires the commission of a tort to impose liability.  Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 969 (4th Cir. 1992) ("While the FTCA waives sovereign

64

immunity for actions alleging torts by employees of the
Government, it does not create novel causes of action.  Thus, the
mere allegation of a breach of duty under Federal law does not,
by itself, state a valid tort claim against the Government.").

More specifically, federal constitutional violations are not
cognizable under the FTCA; state law provides the source of
substantive liability under the FTCA.  See F.D.I.C. v. Meyer, 510
U.S. 471, 477-78 (1994); Webb v. Desan, 250 Fed. Appx. 468, 2007
WL 2962604 (3d Cir., Oct. 11, 2007).

In addition to satisfying these six elements, a plaintiff's
claim under the FTCA must comply with the applicable statute of
limitations. Under federal law, tort actions against the United
States must be:

> [P]resented in writing to the appropriate Federal agency
> within two years after such claim accrues or unless
> action is begun within six months after the date of
> mailing, by certified or registered mail, of notice of
> final denial of the claim by the agency to which it was
> presented.

28 U.S.C. § 2401(b). "The requirements that a claimant timely
present a claim, do so in writing, and request a sum certain are
jurisdictional prerequisites to suit under the FTCA." Deutsch, 67
F.3d at 1091.

> As a sovereign, the United States is immune from suit
> save as it consents to be sued. The terms of its consent
> to be sued in any court define the court's jurisdiction
> to entertain the suit. United States v. Sherwood, 312
> U.S. 584, 61 S. Ct. 767, 85 L. Ed. 1058 (1941). Although
> the Federal Tort Claims Act allows suits against the
> Government for torts committed by its employees while in

65

> the scope of their employment, it specifically requires
> an  initial presentation of the claim to the appropriate
> federal agency and a final denial by that agency as a
> prerequisite to suit under the Act. This requirement is
> jurisdictional and cannot be waived.

Bialowas v. United States, 443 F.2d 1047, 1048-49 (3d Cir. 1971);

accord, Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003),

cert. denied, 543 U.S. 874, 125 S. Ct. 87, 160 L. Ed. 2d 123

(2004).

In this case, the Plaintiffs bring two tort claims against

the Federal Defendants: tortious interference with contract

(Count I) and intentional infliction of emotional distress (Count

II).  The Second Amended Complaint does not plead compliance with

the Federal Tort Claims Act and does not allege that the

Plaintiffs presented their tort claims in writing to HUD within

two years after these claims accrued.  Consequently, this court

does not have jurisdiction to hear these tort claims against the

Federal Defendants.  Accordingly, these claims will be dismissed.

In addition, the Federal Tort Claims Act does not waive the

United States' immunity from claims arising out of an alleged

interference with contract rights.  See 28 U.S.C. § 2680(h)

(excluding from the FTCA "any claim arising out of . . .

interference with contract rights").  For this reason, even if

the Plaintiffs had followed the appropriate notice procedure, the

court would not have jurisdiction to hear the Plaintiffs' claim

for tortious interference with contract rights as to the Federal

Defendants.

Therefore, the Plaintiffs' tort claims in Counts I and VIII against the Federal Defendants must be dismissed.

### 3. Remaining Federal Claims

For substantially the same reasons discussed above in subsection IV.B.5 and VI.B.2, the Plaintiffs' Second Amended Complaint fails to state a claim in Counts XI and XII and these counts will be dismissed in their entirety.

### 4. Bivens Claim against Defendant Thumar

Count XIII of the Plaintiffs' Second Amended Complaint alleges constitutional claims against Defendant Thumar as a federal official and therefore must proceed as a Bivens action. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens is the federal equivalent of a 42 U.S.C. § 1983 action against state actors and is a judicially created cause of action to address civil rights violations by federal officials. Brown v. Phillip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001).

In Bivens, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment. In doing so, the Supreme Court created a new constitutional tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983. Both are designed to provide

67

redress for constitutional violations. Thus, while the two bodies
of law are not "precisely parallel", there is a "general trend"
to incorporate § 1983 law into Bivens suits.  Chin v. Bowen, 833
F.2d 21, 24 (2d Cir. 1987)).

In order to state a claim under Bivens, a claimant must show
(1) a deprivation of a right secured by the Constitution and laws
of the United States; and (2) that the deprivation of the right
was caused by an official acting under color of federal law. See
Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn.
1987)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56
(1978)).

In this case, the Plaintiffs allege in Count XIII:

325.  Defendants Thumar, John Does and Jane Does agreed to
and did act with the non-Federal Defendants, who were
acting under the color of state law, knowingly,
intentionally, willfully, maliciously, wantonly,
negligently, recklessly and with deliberate indifference,
in concert and conspiracy with each other and others to
violate Plaintiffs' constitutional rights because
Plaintiffs are Female, low-income and minorities; and

326.  In particular, Defendants Thumar, John Does and Jane
Does agreed to act in concert and acted in concert with
the non-Federal state actor Defendants to violate
Plaintiffs' constitutional, civil and other rights by
knowingly, wrongfully, willfully, maliciously, wantonly,
recklessly, grossly negligent and deliberately
indifferently failing to properly exercise financial and
legal supervisory authority over the non-Federal
Defendants, including but not limited to Defendants; and

327.  Defendants Thumar, John Does and Jane Does concerted
actions with the non0-Federal Defendants violated
Plaintiffs' constitutional rights under the United States
Housing Act of 1937, 42 U.S.C. §§ 1437 et seq.; Title VI
of the Civil Rights Act of 1964; 42 U.S.C. §§ 1983, 1981,

1982, 1985(3) and 1988; Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601 et seq., the First, Fifth, Ninth, Thirteenth and Fourteenth Amendments to the United States Constitution, and other constitutional provisions, federal statutes and state laws.

In addition, the Second Amended Complaint also alleges that Defendant Thumar, during his tenure as Acting Director of Public Housing in the HUD Region, acted in concert with the other non-Federal defendants to recklessly approve loan applications that were unnecessary and unlawfully encumbered Plaintiffs' units and complied with the terms of the original and amended mortgages, deeds, restrictive covenants and easements related to the Camden Townhouses Broadway Street development. (Sec. Am. Compl. ¶¶ 83, 84.)

These allegations are insufficient to support a Bivens claim as they are conclusory recitations of legal boilerplate which fail to satisfy the pleading requirements of Rule 8. Furthermore, even if the court were to accept these allegations as properly pleaded as fact, these allegations also fail to establish that Defendant Thumar personally deprived the Plaintiffs of a constitutional right.

First, the allegation that Defendant Thumar recklessly approved loan applications that were unnecessary and unlawfully encumbered Plaintiffs' units and complied with the terms of the original and amended mortgages, deeds, restrictive covenants and easements related to the Camden Townhouses Broadway Street

69

development will not support a claim for liability under Bivens.
This allegation does not provide sufficient factual context to
support a finding of constitutional deprivation.   It does not
state what loans were recklessly approved, who made the loan
application, when the application was made, the terms for the
loan, or who approved the loan.   There is no factual basis for
the Plaintiffs' conclusory allegation that the approval of
whatever loan application the Plaintiffs are referring to was
reckless nor is there a basis for to establish that the approval
of said loan application violated Plaintiffs' constitutional
rights.   Therefore, this allegation fails to support a claim
against Defendant Thumar under Bivens.

     The remaining allegations against Defendant Thumar fail to
allege factual grounds and merely recite legal boilerplate and
therefore suffer from the same deficiencies as Plaintiffs'
federal claims brought in Counts XI and XII discussed supra.   To
the extent that the Plaintiffs allege Defendant Thumar failed in
a supervisory capacity, these claims fail to state a claim
because the Plaintiffs have not alleged facts sufficient to
establish that Defendant Thumar had knowledge of the non-Federal
defendants' actions and acquiesced in the same.   See Baker v.
Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)(permitting
plaintiff to hold a supervisor liable for a subordinate's § 1983
violation provided plaintiff is able to show "the person in

charge ... had knowledge of and acquiesced in his subordinates' violations").

It is clear the Plaintiffs brought this complaint against Defendant Thumar solely because he was HUD's Acting Director of Public Housing in New Jersey and not because of any personal involvement in causing the alleged harm to the Plaintiffs.  While the Supreme Court has not addressed whether supervisors in Bivens actions may be held liable on a theory of respondeat superior, most courts to address the issue have held that Bivens liability may not be based on respondeat superior. See , e.g., Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)(collecting cases); Laswell v. Brown, 683 F.2d 261, 268 & n.11 (8th Cir. 1982), cert. denied, 459 U.S. 1210, 103 S. Ct. 1205, 75 L. Ed. 2d 446 (1983) (basing its conclusion on the fact that the Supreme Court has looked to 42 U.S.C. § 1983 cases in evaluating the nature of defendant officials' qualified immunity); Kite v. Kelley, 546 F.2d 334, 337-38 (10th Cir. 1976). See also Parker v. U.S., 197 Fed. Appx. 171, 173 n.1 (3d Cir. 2006) (not precedential); Balter v. U.S., 172 Fed. Appx. 401, 403 (3d Cir. 2006) (not precedential).

This Court finds persuasive the reasoning of those courts that have declined to impose respondeat superior liability in Bivens actions.  Here, to the extent Plaintiffs seek to proceed under Bivens, they have failed to state a claim against Defendant

Thumar, as the theory of liability seems to be solely based upon vicarious liability, which is legally untenable under Bivens.

Therefore, Plaintiffs' Bivens claim alleged in Count XIII against Defendant Thumar will be dismissed for failure to state a claim.

### C. Conclusion as to the Federal Defendants

The Federal Defendants motion to dismiss will be granted. First, the Federal Defendants are entitled to sovereign immunity and in the absence of a waiver of immunity, the Plaintiffs' cannot proceed in an action for damages against HUD, as an agency of the United States, or Defendant Thumar in his official capacity as he is an employee of HUD.

The Plaintiffs have failed to allege compliance with the Federal Tort Claims Act, and therefore, Counts I and VIII alleging tortious interference with contract and intentional infliction of emotional distress will be dismissed against the Federal Defendants.

Furthermore, the Plaintiffs' claims in Counts XI, XII and XIII fail to state a claim as the Plaintiffs have not alleged sufficient facts to support these claims and instead, have merely recited legal boilerplate.

Therefore, the claims against the Federal Defendants will be dismissed in their entirety.

**VIII. Defendant Susan Bass-Levin's Motion to Dismiss**

Defendant Susan Bass-Levin filed the final motion to dismiss.  As discussed <u>supra</u>, the Plaintiffs brought claims against Defendant Bass-Levin in her capacity as former DCA Commissioner and these claims will be dismissed as she is entitled to qualified immunity.  <u>See</u> Section IV.B.2, <u>supra</u>. However, the Plaintiffs also brought claims against Defendant Bass-Levin in her individual capacity and base these claims on Bass-Levin's activities as CEO of the Cooper Hospital Foundation. The instant motion addresses the sufficiency of these additional claims.

The Second Amended Complaint sets forth the following specific allegations against Defendant Bass-Levin in her individual capacity as CEO of the Cooper Hospital Foundation:

> 81. Plaintiffs reasonably believe and avers, since her departure from NJDCA, Defendant Levin, in [her] new capacity as President of the Cooper Hospital Foundation, has held numerous meetings with Defendants Roizman and Camden Townhouses Associates II, L.P. and other unknown persons to unlawfully acquire the properties subject to this litigation contrary to the clearly established constitutional, civil and other rights of Plaintiffs.

> 82. Plaintiffs reasonably believe and aver that Defendant Levin's numerous meetings with Defendants Roizman and Camden Townhouses Associates II, L.P. and other unknown persons were pursuant to a long-standing course of dealings with and in active concert with Defendants roizman and Camden Townhouses Associates II, L.P. to unlawfully acquire the properties subject to this litigation contrary to the clearly established constitutional, civil and other rights of Plaintiffs.

(Sec. Am. Compl. ¶¶ 81, 82)

Based on these allegations, the Plaintiffs' bring the following causes of action against Defendant Susan Bass-Levin in her capacity as CEO of the Cooper Foundation:  tortious interference with contract (Count I); intentional infliction of emotional distress (Count VIII); violations of constitutional amendments, civil rights and other federal laws (Count XI); and conspiracy under the color of state law to violate Plaintiffs' constitutional rights, civil rights and other rights (Count XII).

### A. The Parties' Arguments

Defendant Susan Bass-Levin argues that the Plaintiffs have failed to state a claim against her in her individual capacity and that the Plaintiffs have failed to state a claim against her in her capacity as CEO of the Cooper Foundation.  Specifically, Defendant Bass-Levin argues that the Plaintiffs have failed to allege facts to support their claim for tortious interference with contract because they have not alleged that Defendant Bass-Levin knew about the Deed Restriction or actually interfered with the Plaintiffs' contract rights.  As to the Plaintiffs' claim for intentional infliction of emotional distress, Defendant Bass-Levin maintains that the Plaintiffs have not alleged any extreme or outrageous conduct taken by her.  Finally, similar to the previous motions to dismiss, Defendant Bass-Levin argues that Plaintiffs' federal claims alleged in Counts XI and XII lack the factual specificity required by Fed. R. Civ. P. 8(a) and fails to

74

give Defendant Bass-Levin notice of the claims against her.  In
addition, Defendant Bass-Levin argues that in her individual
capacity and as CEO of the Cooper Foundation, she is not a state
actor and therefore cannot be found liable for many of the
Plaintiffs' purported federal claims.

The Plaintiffs raise similar arguments in their opposition
that were raised in the previous motions to dismiss.  The
Plaintiffs maintain that their state tort law claims and federal
claims are pled with sufficient factual specificity and should
not be dismissed.  The Plaintiffs also argue that to the extent
Defendant Bass-Levin is being sued as a private individual, the
Plaintiffs have alleged sufficient facts to establish that she
conspired with state actors and therefore can be held liable for
under Count XII for conspiring to violate Plaintiffs' federal and
civil rights.

### B. Analysis

#### 1. Tort Claims

The Plaintiffs allege that "All Defendants" tortuously
interfered with contract (Count I) and are liable for intentional
infliction of emotional distress (Count VIII).  These
allegations, as they are brought conclusively against "all
defendants," are brought against Defendant Susan Bass-Levin in
her individual capacity for actions taken while she was CEO of
the Cooper Foundation.

75

Under New Jersey law, a claim based on tortious interference with contractual relations must allege four elements: (1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) the interference was without justification; and (4) the injury caused damage.  <u>Russo v. Nagel</u>, 358 N.J. Super. 254, 268 (App. Div. 2003).

Importantly, "it is fundamental to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship."  <u>Printing Mart-Morristown v. Sharp Electronics Corp.</u>, 116 N.J. 739, 752 (1989).  A cause of action for tortious interference "was not meant to upset the rules governing the contractual relationship itself."  <u>Id.</u> at 753. "Where a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law."  <u>Id.</u>

Defendant Bass-Levin first argues that she cannot be liable for tortious interference with contract because she was not a party or third party beneficiary to the Financing, Deed Restriction and Regulatory agreement between the NJHMFA and the Roizman Defendants, in which the right of the Plaintiffs to purchase their low-income housing units for one dollar ($1) allegedly flows.  This argument is without merit, as claims for

76

tortious interference with a contract may only be brought against individuals who are not a party to a contract.  <u>Printing Mart-Morristown</u>, 116 N.J. at 752.

However, the court does find that the Plaintiffs' complaint fails to state a claim against Defendant Bass-Levin for tortious interference with contract because the Second Amended Complaint does not allege sufficient facts to establish that Defendant Bass-Levin actually interfered with the Financing, Deed Restriction and Regulatory Agreement nor does the Second Amended Complaint establish that Defendant Bass-Levin acted intentionally or maliciously to interfere with Plaintiffs' alleged rights.

In particular, the Second Amended Complaint merely alleges that Defendant Bass-Levin, in her capacity as CEO of the Cooper Foundation, met with the Roizman Defendants to acquire the Camden Townhouses II property.  The Plaintiffs' do not allege any facts to establish the Defendant Bass-Levin knew about the Plaintiffs' alleged rights to purchase their housing units for $1 after fifteen (15) years of residence yet alone facts which establish Defendant Bass-Levin acted intentionally or maliciously with regard to these rights.  In addition, the Plaintiffs' do not allege any facts to establish that these meetings resulted in any interference with the Plaintiffs' contractual rights.  It is unclear from these factual allegations that these meetings resulted in any action whatsoever with regard to the Plaintiffs'

77

alleged rights.

Without any facts to establish that Defendant Bass-Levin acted intentionally or maliciously with regard to Plaintiffs' contractual rights or that her actions resulted in actual interference with Plaintiffs' contractual rights, the Plaintiffs' complaint fails to state a claim against Defendant Susan Bass-Levin for tortious interference with contractual rights. Accordingly, Count I will be dismissed against Defendant Bass-Levin.

Count VIII alleges that "All Defendants," including Defendant Bass-Levin, intentionally inflicted emotional distress on the Plaintiffs.  Under New Jersey law, a plaintiff must allege four elements to state a claim for intentional infliction of emotional distress: (1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that the plaintiff's emotional distress was severe.  Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863 (1988).

The Plaintiffs have failed to allege facts to establish that Defendant Bass-Levin's conduct was extreme and outrageous.  The only specific allegations about Defendant Bass-Levin's conduct in her individual capacity state that she met with the Roizman Defendants in her capacity as CEO of the Cooper Foundation to

discuss acquiring the Camden Townhouses II property.  These bare allegations do not rise to the level of extreme and outrageous conduct.  Meetings with the Roizman Defendants, without more, is not sufficient to establish the type of egregious conduct necessary to sustain a claim for intentional infliction of emotional distress.  In addition, there are no allegations that support a finding that these meetings were conducted with the intent to cause the Plaintiffs' emotional distress.  Indeed, the Second Amended Complaint does not allege any facts to support that Defendant Bass-Levin even knew of the named Plaintiffs' residency at the Camden Townhouses or their alleged right to purchase the property at issue.

Therefore, the Plaintiffs have failed to state a claim against Defendant Bass-Levin in her individual capacity for intentional infliction of emotional distress.

Accordingly, Counts I and VIII are dismissed against Defendant Bass-Levin.

### 2.  Federal Claims

For substantially the same reasons discussed above in subsection IV.B.5 and VI.B.2, the Plaintiffs' Second Amended Complaint fails to state a claim in Counts XI and XII.  As previously explained, the court is unable to make sense of the Plaintiffs' conclusory statements in Count XI and Count XII. Furthermore, the Plaintiffs' allegations against Defendant Susan

79

Bass-Levin in her individual capacity have little relationship to the facts plead in the preliminary portion of the Plaintiffs' Second Amended Complaint and instead are so broad as to encompass the entire universe of federal and state law.  This is clearly violative of Rule 8 which requires a plaintiff to set forth a **<u>short and plain statement of the claim</u>** showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8 (a)(2).

Due to the generality and vagueness of Plaintiffs' allegations in Counts XI and XII, the complaint fails to give the defendants "fair notice of what the claim is and the grounds upon which it rests." <u>Twombly</u>, 550 U.S. at 555.  This is especially true in the case of the Defendant Susan Bass-Levin because the Plaintiffs' complaint does not specifically name Defendant Susan Bass-Levin in any count, but rather includes her in their sweeping catchall designation of "All Defendants" in Counts XI and XII.

Therefore, Counts XI and XII will be dismissed against Defendant Susan Bass-Levin in her individual capacity.

### C. Conclusion as to Defendant Susan Bass-Levin in Individual Capacity

For the reasons stated above, the Plaintiffs have failed to state a claim against Defendant Bass-Levin in her individual capacity and therefore these claims will be dismissed.  In addition, the court has previously concluded in Section IV.B., <u>supra</u>, that the claims brought against Defendant Susan Bass-Levin

80

in her capacity as former DCA Commissioner will be dismissed.

Accordingly, all claims against Defendant Bass-Levin will be dismissed.

## IX.  CONCLUSION

For the reasons stated above, the court will grant the above motions to dismiss in their entirety and all claims against the DCA Defendants, the Federal Defendants, NJHMFA, the CRA Defendants, Defendant Lori Grifa and Defendant Susan Bass Levin are hereby dismissed.

A court may deny leave to amend a complaint with prejudice if the amendment would be inequitable or futile.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

The dismissal of the above claims will be with prejudice with one narrow exception.  First, the dismissal of the claims against the DCA, DCA Defendants Richman, Grifa and Bass-Levin; the NJHMFA, the CRA, CRA Defendant Olivette Simpson and the Federal Defendants will be with prejudice.  Any amendment would be futile given the immunity and respondeat superior issues discussed above, the Plaintiffs' failure to comply with the Notice Requirements of the New Jersey Tort Claims Act, the Contractual Liability Act and the Federal Tort Claims Act.

In addition, the state law claims against Defendants McCormick and Esochanghi are dismissed with prejudice as the

Plaintiffs have failed to comply with the New Jersey Tort Claims Act and the Contractual Liability Act.

The Court notes this litigation has been pending for over one year and this is Plaintiffs' third complaint.  In their third attempt at pleading a sufficient complaint, the Plaintiffs have failed to allege any facts which would establish personal involvement, knowledge or acquiescence by Defendants Richman, Grifa, Bass-Levin (in her official capacity as DCA Commissioner and her individual capacity as CEO of the Cooper Foundation), Simpson or Thumar in the alleged harm caused to the Plaintiffs. Therefore, any amendment as to the claims against these Defendants would be futile.

However, the Second Amended Complaint, while not alleging facts sufficient to state a claim under the myriad of federal civil and constitutional rights conclusorily plead in Counts XI and XII, has alleged facts sufficient to show that DCA Defendants McCormick and Esochanghi did have personal involvement in the issuance of the Plaintiffs' Section 8 housing vouchers and did not inform the Plaintiffs of their procedural rights to appeal these vouchers.  Therefore, the court cannot conclude that an amendment as to these defendants would be futile.  Accordingly, the court will permit the Plaintiffs to file a motion to amend their complaint to bring a § 1983 claim against Defendants McCormick and Esochanghi for violation of a specific federal

82

right which is based on the specific facts alleged as to their
personal involvement, either a specified constitutional provision
or a federal statute giving rise to a direct right of action.
This is not an invitation to the Plaintiffs to file a motion to
amend their complaint to include causes of action against any of
the other government defendants nor is it permitting the
Plaintiffs to file additional claims beyond a Section 1983 claim
against Defendants McCormick and Esochanghi.  In addition, the
court wants to make clear the all state law claims against
Defendants McCormick and Esochanghi are dismissed with prejudice
as the Plaintiffs have failed to comply with the notice
requirements of the New Jersey Tort Claims Act and the
Contractual Liability Act.

    The court's decision to dismiss the federal claims alleged
against Defendants McCormick and Esochanghi without prejudice is
a narrow exception to the remainder of the court's ruling which
dismisses all other claims against the DCA, DCA Defendants
Richman, Grifa, Bass-Levin, McCormick, Esochanghi, the NJHMFA,
the CRA, CRA Defendant Olivette Simpson, the Defendant United
States Department of Housing and Urban Development and Defendant
Thumar with prejudice.

    This Opinion, of course, does not adjudicate Plaintiffs'
claims against the non-moving Defendants.  The accompanying Order

83

will be entered.[6]


**June 27, 2012**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      Chief U.S. District Judge

---

[6] The accompanying Order also lifts the temporary stay upon Plaintiff's motion for summary judgment [Docket Item 123], dismisses that summary judgment motion as moot as to the Defendants which have been dismissed in the present Opinion and Order, and sets the briefing schedule for the remaining parties' opposition briefs.  The accompanying Order likewise lifts the temporary stay upon Defendant City of Camden's cross-motion for summary judgment [Docket Item 166] and sets the briefing schedule.