IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CAROLYN BETHEA, et al., | : | HON. JEROME B. SIMANDLE |
| Plaintiffs, | : | Civil No. 11-254 (JBS/JS) |
| v. | : | **OPINION** |
| ISRAEL ROIZMAN, et al., | : |  |
| Defendants. | : |  |

APPEARANCES:

Joseph Green, II, Esq.
EL-SHABAZZ & HARRIS LLC
100 South Broad Street
Suite 1525
Philadelphia, PA  19110
     -and-
Geoffrey V. Seay, Esq.
1315 Walnut Street, Suit 602
Philadelphia, PA 19107
Pro hac vice
     Attorneys for Plaintiffs Carolyn Bethea, Gloria D. Abner,
     Iona Evans, Darcell Gilmore, Margaret David, Shawn Smalls,
     Twanda Smith, Shelly McCullough, Georgetta Brown, Wanda
     Matis, Christina O'Casio, Maria Torres, Jaharia Figuero,
     Yvette Hernandez, Gladys Antelo, A Class of African-American
     Female Tenants and Prospective Homeowners at Camden
     Townhouses II Broadway Street, A Class of Hispanic Female
     Tenants at Camden Townhouse II Broadway Street, A Class of
     Low-Income Female Tenants at Camden Townhouse II Broadway
     Street.

Joseph B. Fiorenzo, Esq.
SOKOL, BEHOT & FIORENZO, ESQS.
Continental Plaza
433 Hackensack Avenue
Hackensack, NJ  07601
     Attorney for the Defendants Kathy Hvasta, Camden Townhouse
     Associates, II, L.P., Israel Roizman, Roizman Development,
     Inc., William L. Cooney, S.H.N.I.R. Apartment Management
     Corp. and Melissa Jackson-Deeble

1

Michelle Banks-Spearman, Esq.
ATTORNEY'S OFFICE FOR THE CITY OF CAMDEN
4th Floor, Room 419
P.O. Box 95120
Camden, NJ 08101
    Attorney for Defendants City of Camden, New Jersey and
    Edward Williams


**SIMANDLE**, Chief Judge:

## I. INTRODUCTION

    This matter is before the Court on two motions for judgment
on the pleadings or in the alternative, for summary judgment, and
one motion for summary judgment.  The first motion was filed by
Plaintiffs Carolyn Bethea, Gloria D. Abner, Iona Evans, Darcell
Gilmore, Margaret David, Shawn Smalls, Twanda Smith, Shelly
McCullough, Georgetta Brown, Wanda Matis, Christina O'Casio,
Maria Torres, Jaharia Figuero, Yvette Hernandez, Gladys Antelo
("Plaintiffs") against all Defendants.  [Docket Item 123.]  The
City of Camden and Edward Williams ("City Defendants") filed a
cross motion for judgment on the pleadings or alternatively,
summary judgment in response.  [Docket Item 166.]  Defendants
Kathy Hvasta, Camden Townhouse Associates, II, L.P., Israel
Roizman, Roizman Development, Inc., William L. Cooney, S.H.N.I.R.
Apartment Management Corp. and Melissa Jackson-Deeble ("Roizman
Defendants") filed a cross motion for summary judgment against
the Plaintiffs.  [Docket Item 180.]  The Plaintiffs did not file
opposition to either cross motion.

In its Opinion and Order of June 27, 2012, the court granted several motions to dismiss filed by the other government agency defendants primarily on grounds of immunity, failure to comply with state notice requirements under the New Jersey Tort Claims Act and failure to state a claim.  [Docket Items 172 and 173.] This reasoning applies with equal force to the City Defendants, and as discussed further below, the City Defendants' motion for judgment on the pleadings will be granted and Plaintiffs' claims against them will be dismissed.

As to the Roizman Defendants, the court will grant their motion for summary judgment.  As discussed in the court's previous opinion, the Plaintiffs' complaint fails to state a claim against any of the defendants for violations of federal constitutional and civil rights.  Consequently, these claims will be dismissed.  In addition, there are no genuine issues of material fact in the record before the court and the court concludes as a matter of law that the Plaintiffs did not have a contractual right to ownership of their rental units. Accordingly, summary judgment is appropriate to dismiss the remainder of Plaintiffs' Second Amended Complaint.

## II.  BACKGROUND

The factual and procedural history of this case is set forth in the court's opinion of June 27, 2012 and is incorporated

herein.  [Docket Item 172]; <u>Bethea v. Roizman</u>, Civ. No. 11-254, 2012 WL 2500592 (D.N.J. June 27, 2012).

The Plaintiffs filed their initial complaint on January 18, 2011.  [Docket Item 1.]  The Plaintiffs have since amended their complaint twice.

The Second Amended Complaint is brought by 16 named Plaintiffs who are low-income African American and Hispanic women who allege that they are present and/or former tenants at Camden Townhouses II Broadway Street.  (Sec. Am. Compl. ¶¶ 15-30.)

In November 1992, the Camden Redevelopment Agency ("CRA") sold 65 tracts of land and improvements to one of Roizman's businesses - Camden Townhouses Associates II, L.P. - for one hundred seventy-five thousand dollars ($175,000), and an additional forty thousand dollars ($40,000) administrative fee. (Sec. Am. Compl. ¶ 62.)  Camden Townhouses Associates II also entered into an agreement that these 65 tracts of land were to be developed into 91 affordable rental housing units. (Sec. Am. Compl. ¶ 63.)

Contemporaneously, Roizman, through Camden Townhouses Associates II, L.P., acquired a loan from the New Jersey Housing Mortgage and Financing Agency ("NJHMFA") and entered into a Financing, Deed Restriction and Regulatory Agreement with the NJHMFA which stated:

> It is understood by the parties hereto that after a term of fifteen (15) years from the end of the Construction

> Period it is the Owner's intent to sell the Project
> rental units to Low-Income Persons. In the event of such
> a sale, the Owner Hereby represents, warrants and
> covenants that the Project rental units will be initially
> offered for sale for the sum of One Dollar (U.S. $1.00)
> to the existing Low-Income Tenants who meet the income
> requirements of Low-Income Persons.

(Sec. Am. Compl. ¶ 74.) On July 15, 1994, NJHMFA and Camden

Townhouses Associates II, L.P. recorded a Deed of Easement and

Restrictive Covenant for Extended Low-Income Occupancy which

provided:

> This Deed of Easement and Restrictive Covenant shall
> constitute an agreement between HMFA and the Owner and is
> enforceable in the courts of the State of New Jersey by
> HMFA or by an individual or individuals whether
> prospective, present or former occupants of the Building,
> who meet the low-income eligibility standards applicable
> in the Building under Section 42(g) of the Tax Code, said
> individual(s) being beneficiaries of the agreement which
> is expressed herein between the HMFA and the Owner.

(Sec. Am. Compl. ¶ 75.)

Both agreements were recorded. (Sec. Am. Compl. ¶¶ 74, 75.)

The units at the Camden Townhouses Broadway II development

were then occupied by the Plaintiffs who are low-income, African

American and Hispanic females. The Plaintiffs received Section 8

Housing Vouchers pursuant to 42 U.S.C. § 1437f(o) which provided

the Plaintiffs with rental assistance while living at the Camden

Townhouses Broadway II development. These housing vouchers were

administered through the New Jersey Department of Community

Affairs ("DCA"). (Sec. Am. Compl. ¶ 48.)

As a matter of legal argument, the Plaintiffs contend that

as soon as they became tenants at the Camden Townhouses II Broadway Street Housing Development, "they became either direct parties to the contract or third-party beneficiaries to the contract between Roizman, Roizman Developments, Inc. and its affiliated companies and NJHMFA." (Sec. Am. Compl. ¶¶ 105-107; 123-126.)

The Plaintiffs subsequently had issues with receiving their Section 8 Housing Vouchers and were told that they no longer met the Section 8 guidelines for occupancy at Camden Townhouses II Broadway.  The Plaintiffs allege they were "unlawfully steered" by the DCA Defendants and Roizman Defendants to other, less desirable rental units.  (Sec. Am. Compl. ¶¶ 116, 118, 120-121, 170, 173, 179-184.)  Plaintiff Bethea who remained as a resident in the Camden Townhouses II Broadway development tendered $1 to the Roizman Defendants but was never given title to her housing unit.  (Sec. Am. Compl. ¶¶ 123m 126, 238.)  Plaintiff Bethea was later evicted for failure to pay rent. (Sec. Am. Compl. ¶¶ 127-143).

The Plaintiffs ultimately brought the instant action and the following defendants are named in the Second Amended Complaint:

- Israel Roizman ("Roizman Defendants")
  - Roizman Development, Inc.
  - Camden Townhouses Associates II, L.P.
    - Kathy Hvasta, Manager, Camden Townhouses Associates, II, L.P.
    - William L. Coney, Manager Camden Townhouses Associates, II, L.P.
  - S.H.N.I.R. Apartment Management Corp.

- Melissa Jackson-Deeble, Tenants Accounts Assistant Coordinator, S.H.N.I.R. Apartment Management Corp.

- State of New Jersey Department of Community Affairs ("DCA Defendants")
    - Charles A. Richman, Acting Commissioner
    - Lori Grifa, Former Commissioner
    - Susan Bass-Levin, Former Commissioner
    - Joseph V. Doria, Jr., Former Commissioner
    - Annetta McCormick, Field Office Supervisor
    - Daniel Esochanghi, Employee
    - Kia Turner, Employee

- State of New Jersey Housing and Mortgage Finance Agency ("NJHMFA")

- City of Camden
    - Edward Williams, Director of Development and Planning

- Camden Redevelopment Agency ("CRA Defendants")
    - Olivette Simpson, Director of Housing

- United States Department of Housing and Urban Development ("Federal Defendants")
    - Balu Thumar, Acting Director of Public Housing

The Plaintiffs allege that as a result of the denial of their alleged right to purchase their low-income housing units for one dollar ($1), the named defendants violated a multitude of Plaintiffs' federal civil and constitutional rights and committed a number of state law violations against them.

The Second Amended Complaint brings the following causes of action:

Count I: Tortious Interference with Contract against All Defendants; and

Count II: Breach of Contract against Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P.,

7

the DCA and the NJHMFA ; and

Count III: Unjust Enrichment against Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., the DCA, NJHMFA and City of Camden; and

Count IV: Fraudulent and Deceptive Trade Practices against Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., the DCA, NJHMFA and City of Camden; and

Count V: Specific Performance as to Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., and NJHMFA; and

Count VI: Negligence against Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., and S.H.N.I.R.; and

Count VII: Violation of N.J.S.A. 54:4-6.1, _et_ _seq._ against Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., and S.H.N.I.R.; and

Count VIII: Intentional Infliction of Emotional Distress against All Defendants; and

Count IX: Unfair Debt Collection Practices against Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., S.H.N.I.R., Hvasta, Coney, and Jackson-Deeble; and

Count X: Fraud and Deceptive Business Practices against Roizman, Roizman Development, Inc., Camden Townhouses Associates II, L.P., S.H.N.I.R., Hvasta, Coney, Jackson-Deeble, McCormick, Esochanghi and NJDCA; and

Count XI: Violations of constitutional amendments, civil rights and other federal laws against All Defendants; and

Count XII: Conspiracy under the color of state law to violate Plaintiffs' constitutional rights, civil rights and other rights against All Defendants; and finally

Count XIII: _Bivens_ claim against Thumar and Jane and John Does.

[Docket Item 73.] The Roizman Defendants and the City Defendants

filed answers to the Second Amended Complaint. [Docket Items 94 and 97.] The DCA Defendants, NJHMFA, CRA Defendants, Federal Defendants and Defendants Olivette Simpson and Susan Bass-Levin filed motions to dismiss the claims against them in the Second Amended Complaint in their entirety.

On June 27, 2012, the court issued an opinion granting all the motions to dismiss. The court concluded that many of these governmental defendants were entitled to sovereign immunity and qualified immunity. The court found the Plaintiffs failed to state viable tort and contract claims against these government defendants because the Plaintiffs did not allege that they had filed the proper notice of claim as required under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., and the New Jersey Contractual Liability Act, N.J.S.A. 59:13-5. The court also determined that Plaintiffs' federal claims in Counts X and XI did not meet the pleading requirements of Rule 8. Specifically, the court was unable to make sense of the Plaintiff's conclusory allegations which were so broad as to encompass the entire universe of federal and state law. Since the Plaintiffs' allegations were merely "labels and conclusions" without any factual specificity, the court dismissed Counts XI and XII against all the moving defendants. [Docket Item 172.]

While the motions to dismiss were pending, the court stayed Plaintiffs' pending motion for judgment on the pleadings or in

the alternative, summary judgment [Docket Item 123] and the City Defendants' cross motion [Docket Item 166.] The court dismissed as moot Plaintiffs' motion for judgment on the pleadings as to the DCA Defendants, NJHMFA, CRA Defendants, Federal Defendants and Defendants Olivette Simpson and Susan Bass-Levin in the court's June 27, 2012 order granting these defendants' motions to dismiss. [Docket Item 73.] The court also lifted the stay on the City Defendants' motion and the Plaintiffs' motion as it pertained to the City Defendants and the Roizman Defendants. <u>Id.</u>

In response to the Plaintiff's motion, the Roizman Defendants filed their own cross motion for summary judgment. [Docket Item 180.] The Plaintiff has not filed a response to the City Defendant's cross motion or the Roizman Defendant's cross motion, and the time to do so has expired.

## III.  Standard of Review

Judgment on the pleadings pursuant to Rule 12(c), "will only be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law." <u>DiCarlo v. St. Mary Hosp.</u>, 530 F.3d 255, 259 (3d Cir. 2008). Where the movant alleges that the complaint fails to state a claim upon which relief can be granted, the court applies the same standards as under Rule 12(b)(6). <u>Turbe v. Government of Virgin Islands</u>, 938 F.2d 427,

10

428 (3d Cir. 1991); <u>Spruill v. Gillis</u>, 372 F.3d 218, 223 n.2 (3d Cir. 2004) (applying Rule 12(b)(6) standard to Rule 12(c) motion).

In order to give defendant fair notice, and to permit early dismissal if the complained-of conduct does not provide adequate grounds for the cause of action alleged, a complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a) and 11(b)(3). These factual allegations must present a plausible basis for relief (i.e., something more than the mere possibility of legal misconduct). <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 681 (2009). In its review of a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Iqbal</u>, 556 U.S. at 678.

In ruling on a Rule 12(b)(6) motion to dismiss, a district court may not consider matters extraneous to the pleading sought

11

to be dismissed.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114

F.3d 1410, 1426 (3d Cir. 1997).  Fed. R. Civ. P. 12(d) provides

that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters
> outside the pleadings are presented to and not excluded
> by the court, the motion must be treated as one for
> summary judgment under Rule 56. All parties must be given
> a reasonable opportunity to present all the material that
> is pertinent to the motion.

As a general rule, a district court considering a 12(b)(6) motion

to dismiss relies on "the complaint, attached exhibits, and

matters of public record."  <u>Sands v. McCormick</u>, 502 F.3d 263, 268

(3d Cir. 2007); <u>see also</u> <u>In re Burlington Coat Factory</u>, 114 F.3d

at 1425 (deciding that the district court, in ruling on a motion

to dismiss, should not have considered information from the brief

supporting the motion to dismiss).

Summary judgment is appropriate "if the movant shows that

there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  Where the nonmoving party bears the burden of

persuasion at trial, the moving party may be entitled to summary

judgment merely by showing that there is an absence of evidence

to support an essential element of the nonmoving party's case.

Fed. R. Civ. P. 56(c)(1)(B); <u>Celotex Corp. v. Catrett</u>, 477 U.S.

317, 325 (1986).

The summary judgment standard does not change when the

parties have filed cross-motions for summary judgment.  <u>See</u>

Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987).

Cross-motions for summary judgment:

> are no more than a claim by each side that it
> alone is entitled to summary judgment, and the
> making of such inherently contradictory claims
> does not constitute an agreement that if one
> is rejected the other is necessarily justified
> or that the losing party waives judicial
> consideration and determination whether
> genuine issues of material fact exist.

Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001) (citing Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citing Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139, 145-46 (3d Cir. 1988)).

## IV. City Defendants' Cross Motion for Judgment on the Pleadings or in the alternative, Summary Judgment

The Camden Townhouses Broadway II Development is located in Defendant City of Camden. As alleged in the Second Amended Complaint, Defendant Edward Williams is the Director of Development and Planning for Defendant City of Camden. (Sec. Am. Compl. ¶ 56.) In order to finance the Camden Townhouses II Broadway Development, on November 5, 1992, the Roizman Defendants

acquired a subordinate mortgage loan in the amount of
$1,000,000.00 from Defendant City of Camden and the DCA. (Sec.
Am. Compl. ¶ 66.) The Plaintiffs allege the City Defendants
failed to properly supervise the Roizman Defendants and
consequently allowed them to discriminate in the provision of
low-income housing. (Sec. Am. Compl. ¶ 69.) The Plaintiffs
further allege that the Roizman Defendants repaid this mortgage
by using proceeds from Section 8 Rental subsidies. (Sec. Am.
Compl. ¶ 76.)

In 2004, the City Defendants and the CRA were in the process
of revising the City's Master Plans and designated the area where
the Camden Townhouses Broadway II Development was located as a
prime redevelopment area. (Sec. Am. Compl. ¶ 99.) The Second
Amended Complaint alleges that City Defendants never notified the
Plaintiffs, as tenants in the Townhouse Development, of the
consequences of this redevelopment plan, known as the Cooper
Plaza Redevelopment Plan. (Sec. Am. Compl. ¶ 100.) The
Plaintiffs also allege that the Cooper Redevelopment plan was
designed to exclude Plaintiffs from the area and violated
Plaintiffs' constitutional and civil rights. (Sec. Am. Compl. ¶
103.) This exclusionary result was allegedly part of a custom,
policy or practice of the City Defendants. (Sec. Am. Compl. ¶
104.) The Second Amended Complaint further alleges that the City
of Camden was the recipient of "hundreds of millions of dollars

14

in federal funds, tax credits and other monetary benefits which were used to fund" the Camden Townhouses Broadway II development. (Sec. Am. Compl. ¶ 59.)

The Second Amended Complaint brings the following causes of action against the City Defendants:  tortious interference with contract (Count I); unjust enrichment (Count III); fraudulent and deceptive trade practices (Count IV); intentional infliction of emotional distress (Count VIII); violations of constitutional amendments, civil rights and other federal laws (Count XI); and conspiracy under the color of state law to violate Plaintiffs' constitutional rights, civil rights and other rights (Count XII).

## A.  Parties' Arguments

The Plaintiffs' move for judgment on the pleadings and summary judgment on Plaintiffs' claims for tortious interference (Count I), breach of contract (Count II), unjust enrichment (Count III), violations of constitutional amendments, civil rights and other federal laws (Count XI)[1] and conspiracy to

---

[1] Specifically, the Plaintiffs now label Count XI in their moving papers as a claim for "denial of due process."  However, Plaintiffs' Second Amended Complaint labels Count XI as "violations of constitutional amendments, civil rights and other federal laws" and pleads a myriad of state and federal constitutional violations.  If the Plaintiffs sought relief solely for violating their rights to due process, then Plaintiffs should have succinctly pled this claim in their Second Amended Complaint.  The Plaintiffs instead chose to broadly plead the entire universe of federal and state law, which as the court explained in its June 27, 2012 Opinion, clearly violated Rule 8. The court will not entertain Plaintiffs' attempt at narrowing their ill-pled claim by labeling Count XI as "denial of due

15

violate constitutional, civil and other rights (Count XII). The Plaintiffs' motion for judgment on the pleadings or in the alternative, summary judgment, makes several generalized arguments against all defendants and does not specifically address its claims against the City Defendants. [Docket Item 123.] The Plaintiffs' arguments are repetitive of their opposition to the prior motions to dismiss. [Docket Item 113.] In general, the Plaintiffs argue that the City Defendants are not entitled to immunity, the Plaintiffs did not have to comply with the notice requirements of the New Jersey Tort Claims Act and the Plaintiffs have conclusively established all the necessary facts to support their claims. The Plaintiffs rely primarily on their allegations in the Second Amended Complaint.[2]

---

process." This is not a fair or even plausible reading of the express language of Plaintiffs' Second Amended Complaint.

[2] In Plaintiffs' Statement of Facts Not in Dispute, Plaintiffs largely cite to the allegations in their Second Amended Complaint. The Plaintiffs also state in their brief that these allegations are "undisputed." This is wholly inaccurate as the City Defendants denied the majority of Plaintiffs' allegations in their answer [Docket Item 97] and present a contrasting factual record in support of their motion for summary judgment [Docket Item 166].

Merely citing to the pleadings is insufficient to support a motion for summary judgment. Fed. R. Civ. P. 56. The movants' statement of undisputed material facts, as required by L. Civ. R. 56.1(a), must cite to admissible evidence to support each fact that has not previously been admitted by the proponent, and Plaintiffs have failed to do so. However, as the court has determined that the City Defendants are entitled to judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), Plaintiffs' deficient statement of facts will not affect the court's analysis.

The City Defendants make several arguments in support of
their cross motion.  In particular, the City Defendants contend
that the Plaintiffs have not alleged compliance with the notice
requirements of the New Jersey Tort Claims Act and therefore, all
tort claims against the City Defendants should be dismissed.  The
City Defendants also argue that the Plaintiffs fail to state a
claim for unjust enrichment because they have not alleged facts
to support that the City Defendants received or retained any
benefit from the Plaintiffs.  As to the federal claims, the City
Defendants argue that Defendant Williams is entitled to qualified
immunity and the Plaintiffs have failed to sufficiently plead
discrimination or any constitutional or civil rights violations.

**B. Analysis**

**1. Tort Claims**

It is clear and the parties do not dispute that the City of
Camden is a public entity and Edward Williams, as the Director of
the City of Camden's Department of Planning and Development, is a
public employee as defined by the New Jersey Tort Claims Act.
Tort claims against public entities and public employees are
governed by the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A.
59:1-1 et seq.  See Velez v. City of Jersey City, 180 N.J. 284
(2004).  The NJTCA requires that a notice of claim be filed with
the public entity not later than the ninetieth (90th) day after
accrual of the underlying cause of action.  N.J.S.A. 59:8-8(a).

17

Failure to file the required notice will result in the dismissal of a plaintiff's tort claims. N.J. Stat. Ann. 59:8-3.

The NJTCA defines public entity broadly and "includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1-3. Accoridngly, the City of Camden, as a municipality, is a public entity as defined by the NJTCA and Edward Williams, as the Director of the City of Camden Department of Planning and Development, is a public employee.

Accordingly, the notice provisions of the NJTCA apply and failure to comply with these notice provisions requires dismissal. In this case, the Second Amended Complaint does not allege compliance with the NJTCA notice requirements. Consequently, the Plaintiffs have failed to state a claim against the City Defendants for tortious interference with contract, fraudulent and deceptive trade practices or intentional infliction of emotional distress.

Therefore, the City Defendants' motion for judgment on the pleadings will be granted as to Counts I, IV and VIII of the Plaintiffs' complaint.

### 2. Unjust Enrichment

Under New Jersey law, there are two basic elements of unjust enrichment. "A plaintiff must demonstrate both that defendant received a benefit and that retention of that benefit without

payment would be unjust."  MK Strategies, LLC v. Ann Taylor
Stores Corp., 567 F. Supp. 2d 729, 733 (D.N.J. 2008).

In this case, the Plaintiffs have failed to allege that they
conferred a benefit on the City Defendants.  The City Defendants
did not own or control the Camden Townhouses Broadway II
Development.  Any Section 8 housing vouchers or tax credits that
the City allegedly received did not come from the Plaintiffs.
There are no allegations that the Plaintiffs paid their rent
directly to the City; rather, the Plaintiffs allege they paid
their rent to the Roizman Defendants.  (Sec. Am. Compl. ¶¶ 97,
111, 137

The Plaintiffs have failed to allege that they conferred a
benefit on the City Defendants.  Without alleging a plausible
factual basis for this element, the Plaintiffs' claims for unjust
enrichment against the City Defendants must be dismissed.
Therefore, the City Defendants' motion for judgment on the
pleadings as to Count III will be granted.

### 3.  Federal Claims

As discussed in this court's previous opinion on June 27,
2012, the Plaintiffs' complaint fails to meet the pleading
requirements of Rule 8 with regard to Counts XI and XII which
allege violations of constitutional amendments, civil rights and
other federal laws as well as conspiracy under the color of state
law.  Specifically, this court held:

The Plaintiffs' allegations have little relationship to the facts plead in the preliminary portion of the Plaintiffs' Second Amended Complaint and instead are so broad as to encompass the entire universe of federal and state law. This is clearly violative of Rule 8 which requires a plaintiff to set forth a **<u>short and plain statement of the claim</u>** showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2).

Due to the generality and vagueness of Plaintiffs' allegations in Counts XI and XII, the complaint fails to give the defendants "fair notice of what the claim is and the grounds upon which it rests." <u>Twombly</u>, 550 U.S. at 555.

[Docket Item 172 at 58-59.]

The court finds this reasoning equally applicable to the Plaintiffs' claims against the City Defendants. Therefore, since Counts XI and XII fail to state a claim, the City Defendants' motion for judgment on the pleadings will be granted.

### 4. Conclusion

For the reasons discussed above, the court will grant the City Defendants' motion for judgment on the pleadings. [Docket Item 166.] The Plaintiffs failed to allege compliance with the notice provision of the New Jersey Tort Claims Act and therefore Plaintiffs' claims for tortious interference with contract (Count I), fraudulent and deceptive trade practices (Count IV) and intentional infliction of emotional distress (Count VIII) will be dismissed. The Plaintiffs complaint also fails to allege a plausible factual basis to establish that the Plaintiffs conferred a benefit on the City Defendants. Consequently, Plaintiffs' claim for unjust enrichment (Count VIII) must also be

dismissed for failure to state a claim.  Finally, the Plaintiffs
have failed to comply with the pleading requirements of Rule 8 in
alleging their federal claims in Counts XI and XII.  Therefore,
these claims will be dismissed.

As these are the only claims against the City Defendants,
the Court will grant the City Defendants motion for judgment on
the pleadings in its entirety.  Accordingly, Plaintiffs' motion
for judgment on the pleadings or in the alternative for summary
judgment will be dismissed insofar as it pertains to the City
Defendants.

## V.    Plaintiffs' Motion for Judgment on the Pleadings, or in the Alternative Summary Judgment, and Roizman Defendants' Cross Motion for Summary Judgment

The Plaintiffs now move for judgment on the pleadings, or in
the alternative summary judgment, as to their claims for tortious
interference with contract (Count I); breach of contract (Count
II); unjust enrichment (Count III); violations of constitutional
amendments, civil rights and other federal laws (Count XI); and
conspiracy under color of state law to violate Plaintiffs'
constitutional rights (Count XII).  In opposition, the Roizman
Defendants filed a cross motion for summary judgment as to all
claims.  The Plaintiffs did not respond.

### A. Background

#### 1.  The Parties' Statements of Material Facts

In response to the Plaintiffs' motion for judgment on the
pleadings, or in the alternative, summary judgment, the Roizman
Defendants filed a cross motion for summary judgment. [Docket
Item 180.] The Plaintiffs did not file a reply to this cross
motion.

Pursuant to L. Civ. R. 56.1(a), the Plaintiffs filed a
Statement of Material Facts Not in Dispute. Of Plaintiffs' one
hundred paragraphs of material facts, only ten of these cite to
documents in the record. The remaining facts cite only to the
allegations of Plaintiffs' Second Amended Complaint. This is
insufficient to support a summary judgment motion where the
movant is the party having the burden of proof of these facts at
trial.

Fed. R. Civ. P. 56(a)(1) and L. Civ. R. 56.1(a) require the
movant, in a motion for summary judgment, to furnish a Statement
of Material Facts Not in Dispute citing to evidence in the
record. See Fed. R. Civ. P. 56(a)(1)(requiring a party to
support a factual assertion by "citing to particular parts of
materials in the record, including depositions, documents,
electronically stored information, affidavits or declarations,
stipulations (including those made for purposes of the motion
only), admissions, interrogatory answers, or other materials")
and L. Civ. R. 56.1(a)(requiring movant to set forth material
facts in separately numbered paragraphs "citing to the affidavits

and other documents submitted in support of the motion."). Plaintiffs may not rely on their pleadings to support a motion for summary judgment. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989)(holding that a party cannot rely on unsupported assertions, conclusory allegations or mere suspicions to survive a summary judgment motion). Therefore the court will disregard all of Plaintiffs' facts which are unsupported by a citation to the record, unless the unsupported statements have been admitted by the defendants in their response.

The Roizman Defendants filed a response to the Plaintiffs' statement of material facts despite the Plaintiffs' general lack of citations to the record. The Roizman Defendants also filed their own separate Statement of Material Facts which properly cited to affidavits and other documents in support of their allegations as required by Rule 56. The Plaintiffs chose not to file a reply to the Roizman Defendants' cross motion and consequently, the Plaintiffs did not respond to the Roizman Defendants' supplemental statement of facts.

Fed. R. Civ. P. 56(c) and L. Civ. R. 56.1(a) requires parties to respond to a Counter Statement of Material Facts by addressing each paragraph of the opponent's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to affidavits or other documents in the record of the motion. L. Civ. R. 56.1(a). The

local rule provides that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." Id. Similarly, Fed. R. Civ. P. 56(e)(2) provides for the court to consider any fact not properly addressed by the opposing party as undisputed for purposes of the motion.[3]

Accordingly, as the Plaintiffs have failed to respond to the Roizman Defendants' Counter-Statement of Undisputed Material Facts and because this statement is properly supported with citations to the record, the court will deem these facts undisputed for purposes of this motion.

### 2. Facts

Israel Roizman is the President of Roizman Development Inc., a corporation that is in the business of the development of affordable rental housing. Camden Townhouses Associates II, LP ("Camden Townhouses"), is a limited partnership which was formed to engage in the development of 91 low income rental housing units in Camden encompassing an area of 10 square blocks.

On December 6, 1991, Israel Roizman wrote to the Director of

---

[3] The consequence of the opponent's failure to address the movant's Statement of Material Facts Not in Dispute has long been clear, namely, the movant's facts, duly cited to the record of evidence, are deemed unopposed for purposes of adjudicating the motion. See, e.g., Montville Twp. v. Woodmont Builders, 2005 U.S. Dist. LEXIS 18079 (D.N.J. Aug. 12, 2005); White v. Camden City Bd. of Educ., 251 F. Supp. 2d 1242, 1246 n.1 (D.N.J. 2003), aff'd, 90 Fed. App'x 437 (3d Cir. 2004); Hill v. Algor, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000); Maertin v. Armstrong World Industries, 2000 U.S. Dist. LEXIS 5857 n.1 (D.N.J. 2000).

Research and Development at the New Jersey Housing and Mortgage
Finance Agency (NJHMFA) regarding funding for the Camden
Townhouses development.  In this letter, Israel Roizman stated
that the application for funding was:

> based on a 15-year amortization at 8.5%.  Our proposal
> is to payoff the first mortgage within the 15 years and
> at that time sell each property to each "Qualified low-
> income tenant" for one dollar ($1.00).
>
> In our transfer of deed, the qualified tenant which
> will purchase the property will be required to live in
> the property for a minimum of an additional 15-year
> period.

(Pl.'s Ex. 5).

In response, Joel Silver from the NJHMFA replied to Roizman
and informed him that he would not be able to receive financing
until the 1992-1993 fiscal year.  Mr. Silver also noted:

> Regarding the Project review, we had a brief meeting last
> week with Tom Roberts and Catherine Washington of the
> Camden Redevelopment Authority.  They confirmed that the
> first Broadway Townhouses project was being well
> maintained and confirmed their overall satisfaction and
> admiration for what you accomplished. . . . We are all
> quite excited about the opportunities for homeownership
> that you have described and about the training sessions
> that you hope to develop.

(Pl.'s Ex. 6.)

Camden Townhouses was officially designated as a redeveloper
with regard to these properties in 1992 and entered into a
redevelopment agreement with the Camden Redevelopment Agency
("CRA").  S.H.N.I.R. Apartment Management Corp. ("SHNIR") is the
management company for the project.  Defendant Kathy Hvasta is

the manager and Defendant William Coney is the assistant manager of the project.  Defendant Melissa Deeble-Jackson is an employee of SHNIR.

The Redevelopment Agreement provided that "upon the amortization of the New Jersey Housing & Mortgage Finance Agency's first taxable bond proceeds mortgage, the Redeveloper shall convey all right, title and interest in these properties conveyed pursuant hereto to the Agency [CRA] for the consideration of $1.00 for each dwelling unit."  (Roizman Cert., Ex. A at 7 § 9.)  Consequently, the Redevelopment Agreement states that Camden Townhouses is obligated to transfer the Project back to the CRA after the satisfaction of the first mortgage.  Id.

On September 10, 1992, the NJHMFA wrote to Roizman to inform him that his funding was approved.  In describing the project, the NJHMFA stated:

> Camden Townhouse Associates, L.P., the Sponsor, is seeking construction and permanent financing from the Agency for the rehabilitation of 65 townhouse style apartment buildings into 91 low income rental units containing 2, 3 and 4 bedroom units. It is the Sponsor's intent to lease the units to low income tenants for a period of 15 years.  The units would then be sold to qualified low income persons for the sum of One Dollar ($1.00).

(Pl.'s Ex. 7.)

Having received the necessary approval for financing, Camden Townhouses then entered into a series of mortgages to pay for the

development.  Specifically, Camden Townhouses entered into four

mortgages including three mortgages from the NJHMFA and one

mortgage from the Department of Community Affairs, which will be

discussed in detail below.

First, Camden Townhouses borrowed the collective sum of

$6,300,000.00 from the NJHMFA and these transactions were

evidenced in three separate mortgage loans.  In connection with

all three mortgages, Camden Townhouses and NJHMFA entered into a

Financing, Deed Restriction and Regulatory Agreement ("Regulatory

Agreement") which was executed in 1992 and duly recorded.  This

agreement states:

> The Owner hereby represents, warrants and covenants that
> at all times during the Qualified Project Period, the
> Compliance Period, the Extended Use Period, if
> applicable, or for a term of thirty (30) years from the
> end of the Construction Period, whichever shall be
> longer, 100% of the units shall be available for
> occupancy to Low-Income Tenants or Low-Income Persons, as
> applicable and shall be Rent-restricted until this
> expiration of the Payments Contract; provided, however,
> that after the expiration of the Payments Contract or any
> extensions thereof, the Agency may elect to revise this
> requirement if the financial feasibility of the Project
> is in jeopardy, as determined by the Agency.
>
> It is understood by the parties hereto that after a term
> of fifteen (15) years from the end of the Construction
> Period it is the Owner's intent to sell the Project
> rental units to Low-Income Persons.  In the event of such
> a sale, the Owner Hereby represents, warrants and
> covenants that the Project rental units will be initially
> offered for sale for the sum of One Dollar (U.S. $1.00)
> to the existing Low-Income Tenants who meet the income
> requirements of Low-Income Persons.  The Owner further
> represents that any sale or resale of a Project unit
> shall be affordable to purchasers who meet the income
> eligibility requirements for Low-Income Persons.

(Roizman Cert. ¶ 12, Ex. B at 12 § 4.) On July 15, 1994, NJHMFA and Camden Townhouses Associates also recorded a Deed of Easement and Restrictive Covenant for Extended Low-Income Occupancy which provided:

> This Deed of Easement and Restrictive Covenant shall constitute an agreement between the HMFA and the Owner and is enforceable in the courts of the State of New Jersey by HMFA or by an individual or individuals whether prospective, present or former occupants of the Building, who meet the low-income eligibility standards applicable in the Building under Section 42(g) of the Tax Code, said individual(s) being beneficiaries of the agreement which is expressed herein between the HMFA and the Owner.

(Pls.' Ex. 1 ¶ 6.)

As to the fourth mortgage loan, on November 5, 1992, the City of Camden agreed to provide $1,000,000.00 of its Balanced Housing Funds to the Camden Townhouses and these funds were provided by the Department of Community Affairs. (Pls.' Ex. 9.) This agreement stated:

> the Sponsor (Camden Townhouses Associates, L.P.) shall execute a Note in the amount of $1,000,000.00 secured by a mortgage on property . . . in favor of the Department. The terms and conditions of this note and mortgage shall be subject to the review and approval of the Division of Housing and shall include a provision that allows for the assumption of the obligation by qualified purchases of the units if the Borrower conveys each unit improved with the proceeds to either a family that has been duly qualified by the Department's Affordable Housing Management Services or to another organization approved by the Department ("Qualified Purchaser"); or to a non profit housing corporation(s), that has been approved by the Department. The conveyance shall be evidenced by a deed containing restrictions prescribed by the Department that insure continued affordability and/or occupancy of the units by low and moderate income households.

(Pls.' Ex. 9 at ¶1.B.)

This resulted in the fourth mortgage on the development property. The underlying mortgage note for the Balanced Housing Funds provided that on the maturity date, the Department of Community Affairs ("DCA") would allow the assumption of the mortgage obligation by Qualified Purchasers of the units if the Camden Townhouses Associates complied with certain conditions. The DCA Mortgage provides:

> On the Maturity Dates, the Lender shall allow the assumption of this obligation by qualified purchasers of the units as hereinafter defined if and only if the Borrower complies with the following terms and conditions:
>
> 1. The Borrower shall convey for the sum of One Dollar ($1.00) each unit improved with the proceeds of this mortgage loan to either: a family that has been duly qualified by the Department's Affordable Housing Management Services or another organization approved by the Lender ("Qualified Purchaser"); or to a non profit housing corporation(s), that has been approved by the Department. The conveyance shall be evidenced by a deed containing restrictions prescribed by the Department to insure continued affordability and/or occupancy of the units by low and moderate income households. . . .
>
> For each unit that the Borrower meets the above stated conditions, the Lender shall provide a partial release of the obligations evidenced by this BHP Mortgage Note and a partial release of the underlying BHP Mortgage.

(Roizman Cert. ¶ 16, Ex. C at 2.)

In addition to the above mortgages, Camden Townhouses entered into an agreement in November 1992 with the City of Camden wherein the developed property would be exempt from taxation until the first mortgage held by the NJHMFA was paid in

full.  Instead, Camden Townhouses would make a payment in lieu of taxes to the City equal to 6.28% of its Annual Gross Revenue. (Roizman Cert. ¶ 36, Ex. H.)

The first mortgage on the property was discharged on or about October 1, 2009.  At this point, Roizman offered the property back to the CRA, but the CRA declined to accept title to the properties.  (Roizman Cert. ¶ 9.)  Since the first mortgage was discharged, the properties were no longer exempt from taxation.  For the fiscal year commencing July 1, 2010 and ending June 30, 2011 and the fiscal year commencing July 1, 2011 and ending June 30, 2012, the State did not appropriate any funds for payment of property tax abatements to residential tenants. (Roizman Cert. ¶ 38, Ex. I.)  In addition, Camden Townhouses did not receive a tax reduction in 2010 or 2011.  (Roizman Cert. ¶ 37.)

In total, two of the mortgages held by the NJHMFA have been satisfied and one remains.  The DCA mortgage is also outstanding. (Roizman Cert. ¶¶ 9, 11, 31.)

The construction of the development was completed on or about March 4, 1994 and the units in the Project were rented to low income tenants who received project based Section 8 rental subsidies.  The 15-year period after the end of construction ended March 4, 2009.  Section 8 Housing is a form of rent subsidy administered by the New Jersey Department of Community Affairs,

and the Roizman Defendants have no control or involvement in determining the income eligibility of tenants. Instead, tenants came to Camden Townhouses pre-certified by DCA as to eligibility. This income eligibility screening is performed annually by the DCA and certified to Camden Townhouses.

The Plaintiffs, with the exception of Towanda Smith and Christina O'Casio, are either current or former tenants of Camden Townhouses.[4]

In order to reside in a rental unit of the development, the Plaintiffs entered into Lease Agreements with Camden Townhouses. These lease agreements allow the Plaintiffs to occupy a residential unit in exchange for rent. The lease agreements do not afford the tenants any right to obtain title to their units. (Roizman Cert. ¶¶ 19, 20, Ex. E.)

There are several named plaintiffs in the instant complaint. Plaintiffs Gloria Abner, Sharon Smalls and Shelly Mathis a/k/a Shelly McCullough were not residents 15 years after the completion of construction in March 2009 or after the discharge of the first mortgage on October 1, 2009. Plaintiff Gladys Antelo did not move into Camden Townhouses until after March 2009, more than fifteen years after the date construction was completed. (Hvasta Cert. ¶ 8.)

_____

[4] Neither Towanda Smith or Christina Casio ever resided at Camden Townhouses.

In 2010, Plaintiffs Wanda Matias, Margaret David and Jahaira Figueroa moved out of the Camden Townhouses. Maria Torres voluntarily moved out on October 4, 2011. (Hvasta ¶ 9.) Plaintiffs Iona Evans, Maria Campos, Georgette Brown, Yvette Hernandez and Darcell Gilmore are current tenants.

Plaintiff Bethea resided in Camden Townhouses since construction was completed on the project until December 2010. On April 8, 2010, Defendant Hvasta, as the manager of Camden Townhouses, signed a request for tenancy approval for Bethea to remain at her current address of 523B Broadway. This request was on a NJDCA required form that applied to all residents who decided to remain in their unit for a time period after July 1, 2010. (Hvasta Cert. ¶ 11.)

On or about August 10, 2010, the DCA issued a notice of disapproval to Bethea indicating that Bethea's share of the total housing costs exceeded 40% of her household's monthly adjusted income and consequently, she was not eligible to stay in her unit. This notice was sent directly to Bethea instead of Camden Townhouses. (Hvasta Cert. ¶ 12, Ex. A.)

Camden Townhouses did not learn that the DCA had determined Ms. Bethea was ineligible to remain in her unit at Camden Townhouses until September 2010. Defendant Hvasta confirmed through the DCA that Bethea was issued a new voucher that could be used at a 2-bedroom unit at Camden Townhouses or elsewhere.

(Hvasta Cert. ¶ 13 and 14.)  Camden Townhouses then offered

Bethea a 2-bedroom unit located in another development because

that was the only two bedroom unit available at the time.

(Hvasta Cert. ¶ 4.)  Bethea refused the unit and did not pay the

subsidized rent for her current unit for the months of October,

November and December 2010.  (Hvasta Cert. ¶ 15 and 17.)

During this same time period, in September 2010, Bethea sent

a letter to Israel Roizman seeking title to her unit.  This

letter states:

> My name is Carolyn D. Bethea and I am and have been a
> tenant of the Broadway Townhouses for the past 18 years.
> Within the last two years myself and others that have
> been residing in the Broadway Townhouses 15 years and
> over were promised to be sold there [sic] Townhomes for
> $1.00.
>
> I am sending to you this certified letter and enclosed is
> $1.00 for the purchase of my home at 523 B Broadway
> Camden, NJ 08104.  Please forward the title and the deed
> to the address stated above or schedule an appointment
> with me so I can sign the necessary paperwork required to
> settle this matter.

(Pls.' Ex. 11.)

In December 2010, Camden Townhouses commenced eviction

proceedings for non-payment of rent and Ms. Bethea was served

with the Complaint and notice of the scheduled hearing.  (Hvasta

Cert. ¶ 18.)  The Complaint indicates that the landlord did not

give the tenant an option to purchase the property and that

Bethea owed $951.00 in unpaid rent. (Pls.' Ex. 18 ¶¶ 4, 9A.)

Plaintiff Bethea vacated voluntarily before the court date

for the eviction proceedings.  (Hvasta Cert. ¶ 19.)  The Roizman Defendants are not engaged in a business that has a principal purpose of the collection of debts.  (Roizman Cert. ¶ 25.) However, in November 2011, Plaintiff Bethea received a debt collection notice from a company named ACCB seeking to collect $776.44 on behalf of Camden Townhouses. (Pls.' Ex. 19.)  There is no evidence in the record that Plaintiff Bethea has paid this debt to Camden Townhouses.

Currently, none of the units in the Camden Townhouses development have been conveyed to any tenants or any other persons.  Camden Townhouses continues to retain title to the property which remains a low-income housing development. (Roizman Cert. ¶ 33.)

However, in 2011, the Roizman Defendants entered into negotiations with St. Joseph's Carpenters Society which indicated an interest in pursuing the Project.  A Letter of Intent between Camden Townhouses and St. Joseph's was executed whereby St Joseph's would conduct due diligence of the Project and then make a decision as to whether to proceed to acquire the properties for $91.  (Roizman Cert. ¶ 28, Ex. G.)  The Roizman Defendants agreed to pay up to $50,000 to reimburse St. Joseph's for the cost of due diligence and paid $10,000 in advance.  (Roizman Cert. ¶ 29.)

The Letter of Intent, though, was conditioned upon the elimination of this litigation.  St. Joseph's explained that it

could not afford to be involved in a Project where they will be obligated to incur legal fees and expenses. Consequently, the due diligence investigation has been held in abeyance pending the outcome of this litigation. (Roizman Cert. ¶ 30.)

## B. Analysis

The Plaintiffs bring the following claims against the Roizman Defendants: tortious interference with contract (Count I); breach of contract (Count II); unjust enrichment (Count III); fraudulent and deceptive trade practices (Count IV); specific performance (Count V); negligence (Count VI); violation of N.J.S.A. 54:4-6.1 (Count VII); intentional infliction of emotional distress (Count VIII); unfair debt collection practices (Count IX);  fraud and deceptive business practices (Count X); violations of constitutional amendments, civil rights and other federal laws (Count XI); and conspiracy under color of state law to violate Plaintiffs' constitutional rights (Count XII).[5]

The court will address each count separately below.

### 1. Breach of Contract (Count II)

#### a. Parties' Arguments

The Plaintiffs argue it is undisputed that there is a contract between the Plaintiffs and the Roizman Defendants which

---

[5] In their moving papers, the Plaintiffs mention a claim for breach of the duty of good faith and fair dealing.  This claim is not plead in the Plaintiffs' Second Amended Complaint and therefore will not be addressed by the court.

the Roizman Defendants breached.  The Plaintiffs rely on the July 15, 1994 Deed Restriction as evidence that the Plaintiffs are parties to the November 1992 Financing, Deed Restriction and Regulatory Agreement ("Regulatory Agreement") between the NJHMFA and Camden Townhouses.  The Plaintiffs argue that the Regulatory Agreement clearly evinced an intent to sell the rental units to the Plaintiffs for one dollar and consequently, Plaintiffs are the beneficiaries of this contract.  Further, Plaintiffs rely on the subsequent Deed Restriction as evidence that they are intended beneficiaries of the Regulatory Agreement because the Deed Restriction expressly gives Plaintiffs, as present and former occupants of the development, a right to enforce the agreement in New Jersey state courts.

In addition, the Plaintiffs argue the DCA Mortgage evinces an intent by the Roizman Defendants to sell the rental units to Plaintiffs for one dollar.  The Plaintiffs also rely on the letters from Israel Roizman to various agencies soliciting funding wherein the project was described as providing homeownership opportunities and the eventual sale of the units to the tenants for one dollar.

It is undisputed by the parties that the Roizman Defendants did not sell the units to the Plaintiffs in March 2009, fifteen years after the end of the construction period.  Therefore, the Plaintiffs argue the Roizman Defendants breached the contract and

deprived them of their rights as parties to the contract, or alternatively, as third party beneficiaries.

The Roizman Defendants, in opposition, argue that the Plaintiffs are neither parties to a contract nor third party beneficiaries. Specifically, the Roizman Defendants maintain that there are four operative agreements at issue in this case and none of these agreements give Plaintiffs the right to purchase their rental unit for a dollar.

First, the Roizman Defendants argue the Redevelopment Agreement between the CRA and Camden Townhouses does not bestow any rights on the Plaintiffs. Rather, this agreement requires Camden Townhouses to transfer the property back to the CRA when the first NJHMFA mortgage is discharged.

Next, the Roizman Defendants argue the Regulatory Agreement and Deed Restriction between the NJHMFA and Camden Townhouses do not provide any rights to the Plaintiffs as parties to the contract or third party beneficiaries. In particular, the Plaintiffs are not named in the contract and consequently, the Roizman Defendants maintain they cannot be considered parties to the agreement. Moreover, the Regulatory Agreement expresses that it was Camden Townhouses "intent" to sell the units to qualified tenants and does not mandate a transfer of ownership. Instead, the Regulatory Agreement, through its express language, contemplates Camden Townhouses either selling or retaining the

units at the end of the construction period.  At most, the
Roizman Defendants argue that the Plaintiffs are incidental third
party beneficiaries and have no enforceable rights pursuant to
the agreement between NJHMFA and Camden Townhouses.

The Roizman Defendants also argue that the DCA Mortgage
imposes no obligation on Camden Townhouses to transfer the units
to the Plaintiffs.  Rather, the express language of the DCA
Mortgage gives two options for conveyance of the property.
First, Camden Townhouses could sell the units to the families
that have been duly qualified by the DCA or to another
organization approved by the DCA.  Alternatively, Camden
Townhouses could sell the property to a non-profit organization.
The Roizman Defendants contend that the DCA Mortgage permits
Camden Townhouses to sell the units to the Plaintiffs as long as
Plaintiffs are properly qualified; however, this mortgage does
not require such a transfer and does not provide the Plaintiffs
with enforceable contractual rights.

Finally, the Roizman Defendants maintain that the lease
agreements are the only operative contract between Camden
Townhouses and the Plaintiffs.  The Plaintiffs have not alleged
any breach of Camden Townhouses' obligations under the lease
agreements.  Importantly, the lease agreements do not provide the
Plaintiffs, as tenants, with an option to purchase their unit or
a promise to transfer ownership of the unit.  Therefore, the

Roizman Defendants maintain that the lease agreements cannot serve as a basis for the Plaintiffs' breach of contract claim.

To the extent Plaintiffs rely on pre-contract letters, the Defendants contend this reliance is misplaced. These letters do not constitute a binding contract on the parties and are not incorporated into the final mortgage notes or regulatory agreements.

Accordingly, the Roizman Defendants argue that summary judgment is appropriate to dismiss Plaintiffs' breach of contract claim.

### b. Analysis

To state a claim for breach of contract, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir.2007).

Under New Jersey law, a third party may bring an action to enforce a contract only if the third party is a "person for whose benefit the contract is made." N.J.S.A. 2A:15-2. In order for a third party to have standing to sue, the contracting parties must have intended that the third party receive a benefit which could be enforced in the courts. GE Capital Mortg. Services, Inc. v. Privetera, 346 N.J. Super. 424, 434 (App. Div. 2002). The New Jersey Supreme Court has explained the "contractual intent to

recognize a right to performance in the third person is the key. If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing." Broadway Maintenance Corp. v. Rutgers, State University, 90 N.J. 253, 259 (1982).

In this case, the only contract directly between the Roizman Defendants and the Plaintiffs are the lease agreements. The Plaintiffs do not allege that the lease agreements were breached by the Defendants in any way. Therefore, the lease agreements cannot serve as a basis for Plaintiffs' breach of contract claim.

In addition, the Plaintiffs' breach of contract claim is filed against the Roizman Defendants, the DCA[6] and the NJHMFA.[7] The Plaintiffs have not pled a violation of the CRA Redevelopment Agreement, nor do the Plaintiffs rely on the CRA Redevelopment Agreement in their moving papers. Therefore, the Plaintiffs' breach of contract claim does not arise out of any alleged violation of the CRA Redevelopment Agreement.

To the extent the Plaintiffs rely on pre-contractual letters from Roizman to various lending agencies to support their breach of contract claim, the court finds this unpersuasive. These

---

[6] The breach of contract claim against the DCA was dismissed in the court's June 27, 2012 opinion. [Docket Item 172.]

[7] The breach of contract claim against the NJHMFA was dismissed in the court's June 27, 2012 opinion. [Docket Item 172.]

letters are not binding contracts, were not incorporated into the final lending agreements and cannot serve as a basis for liability.

The issue then becomes whether the Plaintiffs are third party beneficiaries of the remaining agreements, the DCA Mortgage and the NJHMFA Regulatory Agreement, or alternatively, whether Plaintiffs are merely incidental beneficiaries with no right to sue.

After examining the terms of the DCA Mortgage, the court concludes that the Plaintiffs are not third party beneficiaries and may not bring suit to enforce this contract. Importantly, the language of the DCA Mortgage does not require Camden Townhouses to transfer ownership of the rental units and does not evince an intent by the contracting parties to confer a benefit on the Plaintiffs. Specifically, the DCA Mortgage provides:

> On the Maturity Dates, the Lender shall allow the assumption of this obligation by Qualified Purchasers of the units as hereinafter defined if and only if the Borrower complies with the following terms and conditions:
>
> 1. The Borrower shall convey for the sum of One Dollar ($1.00) each unit improved with the proceeds of this mortgage loan to either: a family that has been duly qualified by the Department's Affordable Housing Management Services or another organization approved by the Lender ("Qualified Purchaser"); or to a non-profit housing corporation(s), that has been approved by the Department.

This language allows Camden Townhouses to sell the rental units to a family that has been deemed a "qualified purchaser" or to a

non-profit housing corporation.  Indeed, this language does not require that the rental units be transferred to current tenants in the building.  Rather, the DCA Mortgage gives Camden Townhouses discretion in deciding whether to sell the units to families or to a non-profit, and in the case of families, whether to sell the units to existing tenants or other qualified purchasers.

Any benefit conferred on the Plaintiffs under the DCA mortgage would be incidental.  The contracting parties gave broad latitude to the Camden Townhouses in conveying ownership of the rental units and does not mandate that the Camden Townhouses sell the units at a specified time to the existing tenants of the development.  Without a contractual intent to confer a benefit on the Plaintiffs, the Plaintiffs cannot be considered intended third party beneficiaries to the DCA Mortgage.  Accordingly, the Plaintiffs cannot base their breach of contract claim on any alleged violation of this agreement.

The same cannot be said of the NJHMFA agreement.  After reviewing the terms of the Regulatory Agreement, it is clear the parties intended to confer a benefit on the future low-income tenants of the development.  The subsequent Deed Restriction gives low-income persons, such as Plaintiffs, the right to bring suit to enforce the Regulatory Agreement in New Jersey state court.  This expressly evinces an intent by the contracting

parties that the Plaintiffs receive a benefit and the Plaintiffs have the ability to enforce this promise in the courts. <u>GE Capital Mortg. Services, Inc. v. Privetera</u>, 346 N.J. Super. 424, 434 (App. Div. 2002).

Therefore, the court is persuaded that the Plaintiffs, as low-income persons, are third party beneficiaries of the NJHMFA Regulatory Agreement and Deed Restriction.

However, the court is not convinced that the benefit intended to be conferred on the Plaintiffs is a mandatory transfer of ownership of the rental units. The Regulatory Agreement states that Camden Townhouses agreed to make the rental units "available for occupancy to Low-Income Tenants or Low-Income Persons" and agreed that the units would be rent-restricted until the mortgage was satisfied. This promise is enforceable "at all times during the Qualified Project Period, the Compliance Period, the Extended Use Period, if applicable, or for a term of thirty (30) years from the end of the Construction Period, whichever shall be longer." (Roizman Cert. ¶ 12, Ex. B at 12 § 4.)

This language confers certain benefits on the Plaintiffs as low-income persons. Specifically, the Regulatory Agreement requires Camden Townhouses to make every rental unit in the development available for occupancy by low-income persons and keep the units rent-restricted. This is a substantial benefit to

43

the Plaintiffs because it ensures they will be able to occupy and reside at the Camden Townhouses development as low-income persons. Their rent will remain subsidized so long as they are qualified and the project will not be converted into a for-profit development. Instead, Camden Townhouses will remain as affordable housing for a period of at least thirty years, which provides stability to low-income persons who remain in the development as tenants.

The Plaintiffs argue that the language of the following paragraph confers a benefit on the Plaintiffs to receive a mandatory transfer of ownership of their rental unit. The court does not agree. The subsequent paragraph of the Regulatory Agreement states:

> It is understood by the parties hereto that after a term of fifteen (15) years from the end of the Construction Period it is the Owner's intent to sell the Project rental units to Low-Income Persons. In the event of such a sale, the Owner Hereby represents, warrants and covenants that the Project rental units will be initially offered for sale for the sum of One Dollar (U.S. $1.00) to the existing Low-Income Tenants who meet the income requirements of Low-Income Persons. The Owner further represents that any sale or resale of a Project unit shall be affordable to purchasers who meet the income eligibility requirements for Low-Income Persons.

(Roizman Cert. ¶ 12, Ex. B at 12 § 4.)

This language is not mandatory and does not require Camden Townhouses to sell the rental units to the existing low-income tenants fifteen years after the construction period's conclusion.

44

At most, this paragraph evinces an intent of Camden Townhouses to make such a sale, but does not require a conveyance of ownership. This conclusion is supported by the language used by the contracting parties, specifically the phrase, "in the event of such a sale." This phrase indicates that the sale of a rental unit is not certain. In addition, the preceding paragraph, discussed above, indicates that the project could remain under the ownership of Camden Townhouses for a period of thirty years. If the parties required Camden Townhouses to convey ownership of the rental units to current tenants fifteen years after the completion of construction, there would be no reason for Camden Townhouses to warrant that the units will remain affordable and rent-restricted for thirty years.

Further, "to be enforceable, a contract must be sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty." Friedman v. Tappan Development Corp., 22 N.J. 523, 531 (1956). Here, there is no express language which definitively requires Camden Townhouses to convey ownership of the rental units to existing tenants fifteen years after the completion of construction. Rather, the express language indicates that "it is the Owner's intent" and states "in the event of such a sale." This language is at best precatory, and is not sufficiently definite for the court to conclude with reasonable certainty that conveyance of

the properties was required.

Consequently, the Plaintiffs, as intended third party beneficiaries, have the benefit of Camden Townhouses remaining an affordable and rent-restricted housing development for a period of thirty years or longer. This is the benefit the contracted parties intended to confer and gave the parties the right to enforce in the state courts.

In contrast, the Plaintiffs do not have the right under this agreement to an automatic transfer of ownership of their rental unit for one dollar. This was contemplated by the parties as a possible outcome, but not mandated or required by the terms of the Regulatory Agreement, and therefore not enforceable in the courts.

Therefore, the Plaintiffs have standing to sue to enforce Camden Townhouses' agreement to remain an affordable and rent-restricted housing development. However, the Plaintiffs do not have standing to sue to force Camden Townhouses to convey ownership of the rental units. Since there is no evidence in the record that Camden Townhouses has breached its agreement to remain an affordable and rent-restricted housing development, Plaintiffs cannot sustain a breach of contract claim.

Accordingly, summary judgment is appropriate and Plaintiffs' breach of contract claim against the Roizman Defendants in Count II will be dismissed. Plaintiffs' motion for judgment on the

pleadings will likewise be denied.

## 2. Tortious Interference with Contract (Count I)

Under New Jersey law, a complaint based on tortious interference with prospective economic advantage must allege three elements: (1) a protectable right - a prospective economic or contractual relationship; (2) the interference was done intentionally and with malice; (3) the interference caused the loss of the prospective gain; and (4) the injury caused damage. Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751 (1989).

In this case, the Plaintiffs argue that the Roizman Defendants tortiously interfered with their right to ownership of the rental units. However, as discussed in subsection V.B.1. above, the Plaintiffs did not have a protectable right to the transfer of ownership. There is no evidence in the record that the Roizman Defendants interfered with Camden Townhouses remaining an affordable and rent-restricted housing development. Indeed, Camden Townhouses remains an affordable development to the present day. Consequently, the Plaintiffs cannot establish the first element of their tortious interference claim.

Accordingly, Plaintiffs' motion for judgment on the pleadings or in the alternative summary judgment on this count of their complaint must be denied. Since the Plaintiffs have not put forth any evidence establishing the first element of their

47

tortious interference claim, the Roizman Defendants' cross motion
for summary judgment will be granted and this count will be
dismissed.

### 3. Specific Performance (Count V)

The Roizman Defendants move for summary judgment dismissing
Count V of Plaintiffs' Second Amended Complaint for specific
performance.  The Plaintiffs' moving papers did not address this
count of their complaint and the Plaintiffs did not oppose the
Roizman Defendants' motion for summary judgment.

The Plaintiffs allege in their complaint that the Roizman
Defendants promised to sell the existing tenants their rental
unit fifteen years from the end of the construction period for
one dollar.  The Plaintiffs seek specific performance and
conveyance of their rental unit.

Under New Jersey law, a court must consider several factors
in determining whether specific performance is an appropriate
remedy for breach of contract.  Importantly, the court must
determine whether the contract is valid and whether the duties of
each party are clear.  Marioni v. 94 Broadway, Inc., 374 N.J.
Super. 588, 599 (App. Div. 2005).  "[T]he right to specific
performance turns not only on whether plaintiff has demonstrated
a right to legal relief but also whether the performance of the
contract represents an equitable result."  Id.

As discussed above in Subsection V.B.1., the Plaintiffs do

not have a contractual right to the transfer of ownership of their rental units.  Therefore, Plaintiffs cannot sustain a claim for specific performance.

Accordingly, the Roizman Defendants' motion for summary judgment will be granted and Count V of the Plaintiffs' Second Amended Complaint will be dismissed.

### 4. Unjust Enrichment (Count III)

In order to establish a claim for unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994).

The Plaintiffs argue the Roizman Defendants accepted rent from Plaintiffs after the Plaintiffs should have been transferred title.  The Plaintiffs also argue the Roizman Defendants accepted subsidies, tax credits and other unspecified payments to which they were not entitled.

The Roizman Defendants maintain the Plaintiffs received the full benefit of their rent payments because they occupied their rental units without disruption and received all the benefits they were entitled to under the Lease Agreement.  The Roizman Defendants further argue that the Section 8 rental subsidies and tax credits cannot serve as a basis for Plaintiffs' unjust enrichment claim because the Plaintiffs did not confer this benefit on the Roizman Defendants.  Rather, government agencies

49

provided these benefits and the Roizman Defendants were entitled to receive them.

The court finds the Roizman Defendants' argument persuasive. As discussed in Subsection V.B.1. above, the Plaintiffs did not have a contractual right to ownership of the rental units. Consequently, the Plaintiffs were required, as specified in the Lease Agreement, to pay monthly rent to continue occupying their units. There is no evidence in the record that the Plaintiffs did not receive the full benefit of their lease agreements. Accordingly, the Roizman Defendants' retention of the Plaintiffs' rent payments is not unjust.

Further, there is no evidence in the record that the Roizman Defendants unlawfully received their Section 8 housing subsidies or tax credits. More importantly, the Plaintiffs did not confer these benefits on the Roizman Defendants and therefore these benefits cannot serve as a basis for Plaintiffs' unjust enrichment claim.

Accordingly, Plaintiffs' motion for judgment on the pleadings, or in the alternative, summary judgment, is denied. The Roizman Defendants' motion for summary judgment is granted and the Plaintiffs' unjust enrichment claim will be dismissed.

### 5. Fraudulent and Deceptive Trade Practices and Business Practices (Counts IV and X)

The Plaintiffs' claims for fraudulent and deceptive trade

practices (Count IV)[8] and fraud and deceptive business practices
(Count X) are essentially common law fraud claims.  Under New
Jersey law, proof of common law fraud requires five elements: (1)
a material misrepresentation by the defendant of a presently
existing fact or past fact; (2) knowledge or belief by the
defendant of its falsity; (3) an intent that the plaintiff rely
on the statement; (4) reasonable reliance by the plaintiff; and
(5) resulting damages to the plaintiff.  <u>Liberty Mut. Ins. Co. v.
Land</u>, 186 N.J. 163, 175 (2006).

The Roizman Defendants move for summary judgment arguing the
Plaintiffs have failed to establish the essential elements
required for a fraud claim.  Specifically, the Roizman Defendants
maintain that the Plaintiffs have not identified any false
representation of a material fact, knowledge of a falsity or that
the Plaintiffs relied on any misrepresentation.  The Plaintiffs

---

[8] In Count IV, Plaintiffs state that they seek relief "under
United States Housing Act of 1937 42 U.S.C. §§ 1437 *et seq.*;
Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, 1982
1983, 1985, 1986 and 1988, the First, Fifth, Ninth, Thirteenth
and Fourteenth Amendments to the United States Constitution,
other constitutional provisions, federal statutes and state
laws." (Pls.' Sec. Am. Compl. ¶ 278.)  The Plaintiffs' reference
to this broad panoply of federal and state law is confusing to
the court and violates Rule 8.  Further, the facts underlying
this cause of action fall squarely within a common law fraud
claim, and the Plaintiffs have pled no facts in Count IV to
suggest that federal law applies in this instance.  Therefore,
the court will treat Count IV as a state law claim for common law
fraud.

declined to file opposition.

The court finds the Roizman Defendants' argument persuasive and will grant summary judgment dismissing Counts IV and X. The Plaintiffs claim that the Roizman Defendants promised to sell Plaintiffs their rental units fifteen years after the end of the construction period. Plaintiffs rely solely on the mortgage documents discussed in Subsection Subsection V.B.1. to support this allegation and present no evidence of a direct misrepresentation by the Roizman Defendants to the Plaintiffs. The only document exchanged directly between the parties are the lease agreements which do not support Plaintiffs' claims. Indeed, the lease agreements do not evince any intent by the Roizman Defendants to transfer ownership of the rental units at any time.

In addition, the Plaintiffs have failed to produce evidence establishing detrimental reliance. Based on the record before the court, the only party to have relied on the alleged promise to transfer the property is Plaintiff Bethea. Plaintiff Bethea sent $1 to Israel Roizman and requested he convey ownership of her rental unit. Plaintiff Bethea then ceased to pay rent and eviction proceedings were filed. Rather than respond to the eviction proceedings, Bethea voluntarily vacated the property.

Plaintiff Bethea cannot be said to have reasonably relied on an alleged promise to transfer ownership of her rental unit.

After sending Israel Roizman $1 and a letter requesting transfer of the property, Bethea failed to follow up with Roizman when her request was ignored.  Plaintiff Bethea then lived rent-free for the next three months so she cannot be said to have suffered damages by paying rent when she was allegedly the true owner of the property.  When eviction proceedings were filed, Plaintiff Bethea chose to voluntarily vacate her rental unit rather than attend her court hearing to defend her property rights, if any.

This is not evidence of detrimental reliance.  Instead, this evinces Plaintiff Bethea's intent to sit on her rights and file a lawsuit after-the-fact.  If Plaintiff Bethea truly relied on Camden Townhouses' alleged promise to convey ownership of her rental unit, then Bethea would not have abandoned her property without attempting to fight the eviction proceedings and legally establish her property rights.

Therefore, the court finds the Plaintiffs have failed to present facts which establish that the Roizman Defendants made a material misrepresentation to the Plaintiffs or that the Plaintiffs detrimentally relied on any alleged promise.  Accordingly, the court will grant the Roizman Defendants' motion for summary judgment and Plaintiffs' claims for fraud in Counts IV and X will be dismissed.

### 6. Negligence (Count VI)

In order to establish a claim for negligence under New

53

Jersey law, a plaintiff must prove three elements: (1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) an injury to plaintiff proximately caused by defendant's breach. Endre v. Arnold, 300 N.J. Super. 136, 142 (App. Div. 1997).

The Roizman Defendants argue summary judgment should be granted as to Plaintiffs' negligence claim because the Plaintiffs have failed to establish that the Roizman Defendants breached a duty. The Plaintiffs filed no opposition to this motion.

The court finds the Roizman Defendants' argument persuasive and will grant summary judgment dismissing this claim. The Plaintiffs have failed to allege that the Roizman Defendants breached any duty owed to the Plaintiffs under the lease agreement or as landlords.

The Plaintiffs allege in their complaint that the Roizman Defendants breached their "duty to act in good faith to deal fairly with Plaintiffs." There is no evidence in the record to support this allegation. First, there is no evidence that the lease agreements were unfair or misleading. Further, any claims that the Plaintiffs were promised ownership of their rental units fifteen years after completion of construction sound in contract, and as discussed in Subsection V.B.1., are meritless.

Therefore, the Roizman Defendants' motion for summary judgment will be granted and Count VI will be dismissed.

## 7. Violation of N.J.S.A. 54:4-6.1 (Count VII)

The Plaintiffs allege the Roizman Defendants violated the Tenant's Property Rebate Act, N.J.S.A. 54:4-6.1, et seq., because the Plaintiffs did not receive a property tax rebate while they were tenants at the Camden Townhouses.  Specifically, the Plaintiffs maintain that the Roizman Defendants failed to post the Rent Rebate Certification in a prominent place and failed to pay rebates to qualified tenants.

The Roizman Defendants move for summary judgment and argue that they were not required to pay rebates under the Tenant's Property Rebate Act.  The Roizman Defendants maintain that the Camden Townhouses property was subject to a tax abatement agreement with the City from 1994 to 2009 and therefore was excluded from the statute during this period.  From 2010 through June 30, 2012, the Roizman Defendants contend that the Camden Townhouses property did not receive a property tax reduction.  Consequently, the Tenant's Property Rebate Act is inapplicable and no rebate was available for the tenants as a matter of law.  Therefore, the Defendants argue summary judgment is appropriate to dismiss this claim.  The Plaintiffs did not oppose this motion.

The Tenant's Property Rebate Act requires:

An owner of qualified real rental property shall provide a property tax rebate to the tenants thereof as provided in this act for each year in which he receives a property tax reduction.

55

N.J.S.A. 54:4-6.4. Qualified real rental property is defined by the statute as:

> any building or structure or complex of buildings or structures in which five or more housing units are rented or leased or offered for rental or lease for residential purposes except:
>
> . . .
>
> (2) buildings or structures which are subject to an abatement agreement under which reduced or no property taxes are paid on the improvements pursuant to statute, notwithstanding that payments in lieu of taxes are paid in accordance with the agreement;

N.J.S.A. 54:4-6.3(a)(2).

The record shows that the Camden Town Houses property was subject to an abatement agreement from 1994-2009. (Roizman Cert. ¶ 38, Ex. H, Agreement for Payment in Lieu of Taxes.) The Plaintiffs have put forth no evidence to dispute this fact. Therefore, under the express language of the statute, the Roizman Defendants were exempt from providing property tax rebates to their tenants from 1994-2009.

In addition, the record shows that Camden Townhouses did not receive a tax reduction in 2010 or 2011. (Roizman Cert. ¶¶ 37, 38, Ex. I.) The Plaintiffs have failed to provide evidence to dispute this fact. The Tenant's Property Rebate Act only applies when an owner of a qualified rental property receives a property tax reduction. Since no property tax reduction was received from 2010-2011, the Roizman Defendants were under no obligation to pay property tax rebates to their tenants and the Tenant's Property

Rebate Act is inapplicable.

It is clear from the record that the Roizman Defendants were not required under the Tenant's Property Rebate Act to provide tax rebates to their tenants. Accordingly, the Roizman Defendants motion for summary judgment will be granted and Count VII of the Plaintiffs' Second Amended Complaint will be dismissed.

### 8. Intentional Infliction of Emotional Distress

Under New Jersey law, a plaintiff must allege four elements to state a claim for intentional infliction of emotional distress: (1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that the plaintiff's emotional distress was severe. Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863 (1988).

The Roizman Defendants argue summary judgment is appropriate to dismiss Plaintiffs' claim for intentional infliction of emotional distress because the Plaintiffs have presented no evidence of extreme or outrageous conduct. The Plaintiffs failed to respond to this motion.

The court finds the Roizman Defendants' arguments to be correct. There is no evidence in the record to support Plaintiffs' allegations that the Roizman Defendants engaged in extreme and outrageous conduct with the intent to cause emotional

distress to the Plaintiffs.  As discussed above in Subsection V.B.1., the Plaintiffs did not have a contractual right to ownership of their rental units.  Moreover, no evidence suggests that these Defendants acted inappropriately, let alone outrageously, toward these Plaintiffs.  Therefore, the Roizman Defendants' failure to transfer ownership of the rental units to the Plaintiffs cannot be considered extreme and outrageous conduct sufficient to support a claim for intentional infliction of emotional distress.

Accordingly, the Roizman Defendants' motion for summary judgment will be granted and Count VIII of Plaintiffs' Second Amended Complaint will be dismissed.

### 9. Unfair debt collection practices (Count IX)

The Ninth Count of the Second Amended Complaint alleges that Plaintiff Bethea was a victim of unfair debt collection practices in violation of 15 U.S.C. § 1692, _et. seq._[9]  Specifically, Plaintiff Bethea maintains that the proceedings brought against her by the Roizman Defendants to collect unpaid rent attempted to collect a non-existent debt.

---

[9] In their Second Amended Complaint, the Plaintiffs state they are seeking relief pursuant to 15 U.S.C. § 1601, _et seq._ However, 15 U.S.C. § 1601 regulates consumer credit cost disclosure and does not address unfair debt collection practices. In contrast, 15 U.S.C. § 1692, _et seq.,_ directly addresses debt collection practices and is applicable to Plaintiffs' allegations.  Therefore, the court will treat Count IX as raising a claim pursuant to 15 U.S.C. § 1692 and analyze the record accordingly.

The Roizman Defendants move for summary judgment and argue that they are not debt collectors as defined by the statute. The Roizman Defendants maintain that they are engaged in the business of development, rental and management of housing and they do not have a principal business purpose to collect debts and do not regularly collect debts owed to another. The Roizman Defendants rely on the certification of Israel Roizman in support of their argument. The Plaintiffs have not filed opposition.

15 U.S.C. § 1692a(6) defines "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

The Roizman Defendants are not debt collectors as defined by this statute. Specifically, these defendants are not engaged in a business the principal purpose of which is to collect a debt. Consequently, the provisions of 15 U.S.C. § 1692, _et_ _seq._, do not apply to the Roizman Defendants.

In addition, there is no evidence in the record to support Plaintiffs' allegations that the eviction proceedings against Plaintiff Bethea were premised on a false debt. As discussed above in Subsection V.B.1., the Plaintiffs did not have a contractual right to ownership of their rental units. Consequently, in order to remain tenants, the Plaintiffs were obligated to pay rent in accordance with their lease agreements.

It is undisputed that Plaintiff Bethea owed three months of rent at the time of her eviction proceedings.  Therefore, it cannot be said that the eviction proceedings were premised on a false debt.

Accordingly, Plaintiffs have not established their claim for unfair debt collection practices and the Roizman Defendants' motion for summary judgment will be granted.

### 10. Violations of Constitutional amendments, civil rights and other federal laws and Conspiracy under color of state law to violate Plaintiffs' constitutional rights (Counts XI and XII)

The Roizman Defendants move for summary judgment as to Plaintiffs' federal claims and argue these claims are legally insufficient.  As discussed in this court's previous opinion on June 27, 2012, the Plaintiffs' complaint fails to meet the pleading requirements of Rule 8 with regard to Counts XI and XII alleging violations of constitutional amendments, civil rights and other federal laws as well as conspiracy under the color of state law.  Specifically, this court held:

> The Plaintiffs' allegations have little relationship to the facts plead in the preliminary portion of the Plaintiffs' Second Amended Complaint and instead are so broad as to encompass the entire universe of federal and state law.  This is clearly violative of Rule 8 which requires a plaintiff to set forth a **"short and plain statement of the claim** showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8 (a)(2).

> Due to the generality and vagueness of Plaintiffs' allegations in Counts XI and XII, the complaint fails to give the defendants "fair notice of what the claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555.

[Docket Item 172 at 58-59.]

The court finds this reasoning equally applicable to the Plaintiffs' claims against the Roizman Defendants. The Plaintiffs have failed to seek leave to amend their complaint in accordance with the Court's June 27, 2012 order. Therefore, since Counts XI and XII fail to state a claim, these counts will be dismissed.

**VI. CONCLUSION**

For the reasons discussed above, the Court will deny the Plaintiffs' motion for judgment on the pleadings, or in the alternative, summary judgment [Docket Item 123]; the Court will grant the City Defendants' cross motion for judgment on the pleadings [Docket Item 166]; and the Court will grant the Roizman Defendants' cross motion for summary judgment [Docket Item 180.]

The Plaintiffs' claims for violations of federal law and civil conspiracy fail to state a claim against any of the defendants. As the Plaintiffs have failed to seek leave to amend their complaint in accordance with the court's June 27, 2012 order, these claims will be dismissed.

The Plaintiffs failed to comply with the notice requirements of the New Jersey Tort Claim Act. Consequently, the tort claims against the City Defendants will be dismissed. In addition, the Plaintiffs have failed to allege that they conferred a benefit on

the City Defendants and therefore cannot maintain an unjust enrichment claim against them.  As these are the only remaining claims against the City Defendants, their cross motion for judgment on the pleadings, or in the alternative summary judgment, will be granted.

As to the Roizman Defendants, there is no genuine issue of material fact present in the record before the court to prevent summary judgment.  The court finds as a matter of law that the Plaintiffs did not have a contractual right to ownership of their rental units.  Consequently, Plaintiffs' claims for breach of contract, specific performance, tortious interference with contractual relations and unjust enrichment fail.  The Plaintiffs have not presented evidence of a material misrepresentation and therefore Plaintiffs' claims for fraudulent and deceptive business and trade practices are insufficient.  Neither the Tax Rebate Act, N.J.S.A. 54:4-6.1, et seq., or debt collection regulations, 15 U.S.C. § 1692, et seq., are applicable to the Roizman Defendants so Counts VII and IX must be dismissed. Further, the Plaintiffs have failed to establish that the Roizman Defendants breached a duty or engaged in extreme and outrageous conduct.  Therefore, Plaintiffs' claims for negligence and intentional infliction of emotional distress are insufficient and cannot survive summary judgment.

Since these motions result in the dismissal of the remaining

claims in Plaintiffs' Second Amended Complaint, the case will be closed on the docket.  The accompanying Order will be entered.


 **September 27, 2012**                    **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge